THE STATE OF OHIO, APPELLEE, *v.* CONLIFF, APPELLANT.
CITY OF COLUMBUS, APPELLEE, *v.* CONLIFF, APPELLANT.

[Cite as State v. Conliff (1978), 61 Ohio App. 2d 185.]

(Nos. 78AP-401 and 78AP-402—Decided December 28, 1978.)

*Mr. Gregory A. Lashutka,* city attorney, and *Mr. Ronald J. O'Brien,* prosecuting attorney, for appellee.
*Spater, Gittes, Marshall & Terzian,* for appellant.

McCORMAC, J. Defendant, the appellant herein, was charged with assault, a violation of R. C. 2903.13(A), and disturbing a lawful meeting, a violation of R. C. 2917.12(A)(1). Not guilty pleas were entered and a jury trial was demanded. On the first day of trial, over the objection of defendant, the charge of disturbing a lawful meeting was amended to a charge of disorderly conduct.

After extensive pretrial motions and hearings, the assault charge came on for a jury trial while at the same time the disorderly conduct charge was tried before the court, a jury trial not being applicable to a minor misdemeanor. The jury acquitted defendant of assault and the court found him guilty of disorderly conduct. Subsequent to the return of the jury verdict, but prior to sentencing on the disorderly conduct charge, defendant made a statement concerning the sentence to be imposed by the judge for which he was found to be in contempt of court and summarily sentenced to ten days in jail. He was then fined $100 and costs, the maximum punishment applicable to the disorderly conduct conviction.

Defendant paid the fine and costs applicable to his conviction of disorderly conduct on the day of conviction. The imposition of the ten day jail sentence imposed for contempt has been stayed pending this appeal.

The cause is before this court on the defendant's appeal of his conviction of disorderly conduct and criminal contempt of court.

Defendant has set forth the following assignments of error:

"I. Where the trial judge hearing a case makes statements concerning the upcoming trial of the case to the entire jury array from which the jury is drawn outside the presence of and without the consent of the parties or their counsel; and where the trial judge expressly states he has great affection for the plaintiff's chief witness who appointed the trial judge; and where the trial judge makes pre-trial rulings based in part on incorrect information about the defendant obtained from sources, including the press, outside the proceedings and without the knowledge of or consent of the parties or their counsel; and where the trial judge makes decisions based in part on public political statements made by the defendant having no connection to the case in the course of a political campaign, it is error for the Court of Common Pleas to overrule defendant's affidavit of prejudice against the trial judge.

"II. The trial court erred in granting the prosecution's motion to amend a charge of disturbing a lawful meeting to a charge of disorderly conduct, the latter not being a lesser included offense of the former.

"III. Where the jury has returned a verdict of 'not guilty' and the court, parties, counsel and court reporter are beginning to leave the courtroom, it is not an act of contempt for the defendant to remind the trial court that it has yet to sentence the defendant on another charge tried to the court where the defendant reminds the court of this fact by saying, 'Are you ready for your ounce of flesh now, your Honor;' and it is error for the trial judge to sentence the defendant summarily to ten days in jail."

The charges herein arose from the throwing of a banana cream pie at Governor Rhodes at the Ohio State Fair on August 16, 1977, apparently as an attempted political protest. The record provided to this court is a partial record which does not include the testimony of what happened. Hence, the substance of defendant's guilt or innocence of the two charges is not before this court nor pertinent to the issues herein.

The first issue is the propriety of the trial court's summary finding of criminal contempt on the part of defendant and the sentence of ten days' imprisonment therefor.

Plaintiff, the appellee, has moved to dismiss the contempt appeal claiming that the notice of appeal was filed only in case No. 78AP-401, the assault charge of which defendant was acquitted, and case No. 78AP-402, the disorderly conduct charge, and that the notice of appeal was not filed in case No. 78AP-438 (labeled case No. 10138 in Franklin County Municipal Court). Thus, the state contends that defendant did not file a notice of appeal within thirty days of the judgment in the contempt case.

This motion is not well taken and is overruled. The contempt citation took place in Municipal Court case 21244-2, the disorderly conduct charge, as it related to the sentencing thereto. It was not the subject of a separate charge but was a summary proceeding, part and parcel of the case pending before the court. Hence, the after-the-fact labeling of it as a separate charge in the trial court is improper and to be ignored. The notice of appeal of defendant was quite clear, reading as follows:

"Notice is hereby given that Steve Conliff, defendant, hereby appeals to the Court of Appeals in Franklin County, Ohio, Tenth Appellate District from the conviction of disorderly conduct and contempt citation entered in this action on May 19, 1978."

Appellee's motion to dismiss the appeal from the contempt citation is overruled.

The combined jury trial and trial to the court commenced on May 17, 1978, and was concluded on May 19, 1978. On that date, the jury returned to the courtroom with their unanimous verdict that defendant was not guilty of assault. Prior to that time, apparently the trial court had decided that defendant was guilty of disorderly conduct, but had delayed sentencing until the jury returned its verdict.

According to the record, the trial court thanked the jury for their time and consideration and excused them, after which they left the courtroom. At that point, the following appears in the record concerning the contempt finding:

"The Court: Let the record show that Mr. Conliff has just asked me if I was going to sentence him on the charge that

was before me for consideration, and I told him that, yes, I was, as soon as we had some order in the courtroom. And Mr. Conliff asked me if I wanted my ounce of flesh or blood, I forget now which one it was.

"Mr. Conliff: It was flesh.

"The Court: If I wanted my ounce of flesh.

"Mr. Conliff: I thought we were adjourned. I was bringing it to your attention.

"The Court: No, I had not forgotten. But, Mr. Conliff, it makes no difference what you think of me or my decision or my conduct of the trial. As a judge, as long as I am here in this courtroom, I am entitled to the respect of a judge. And your last statement is one of contempt, and I find you in contempt of this Court. And having found you in contempt, I sentence you to ten days in the county jail."

The record supplied this court shows no other indications of contemptuous behavior on the part of the defendant during the three day trial. Moreover, the record does not disclose that defendant's question to the court was uttered in a loud or boisterous tone or that it actually disrupted the court proceeding, which as a matter of fact, had been concluded with the exception of sentencing the defendant on the disorderly conduct charge.

The power of the court to summarily punish contemptuous conduct is codified in R. C. 2705.01 which provides:

"A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."

R. C. 1901.13(A) authorizes Municipal Court judges to preserve order and punish contempts.

The Ohio Supreme Court has said, in defining the phrase "in the presence of the court," that: "A court is constructively present whenever any of its court officers are engaged in the execution of the business of the court according to law." *State* v. *Local Union 5760* (1961), 172 Ohio St. 75, paragraph two of the syllabus.

The reason for authorizing the court to summarily punish direct contempt without the necessity of notice and an opportunity to be heard is that unless such an open threat to the orderly procedure of the court is not instantly suppressed and punished, demoralization of the court's authority may follow.

Such necessity does not exist when contempt is not in the presence of the court or not so near as to obstruct the administration of justice. See *Cooke* v. *United States* (1925), 267 U. S. 517, at 536.

In the instant case, since the alleged contempt occurred in open court, it was of a direct nature and, hence, subject to summary disposition by the court. The power to determine the kind and character of conduct which constitutes contempt of court rests in the sound discretion of the court and it has the power to impose a penalty reasonably commensurate with the gravity of the offense. *State* v. *Local Union 5760, supra.*

Because of the summary nature of a direct contempt conviction, the court must be careful to guard against confusing actions or words which are contemptuous to the judge's personal feelings or sensibilities and actions or words which constitute punishable, criminal contempt of a summary nature because of posing an actual or imminent threat to the administration of justice. In this regard, the words of the United States Supreme Court in the case of *In re Little* (1972), 404 U. S. 553, are instructive. In *Little,* the defendant who argued his case *pro se* had stated in the closing argument to the jury that the trial judge was biased, had prejudged the case and that he, the defendant, was a political prisoner. At the conclusion of the trial, the trial court found defendant in direct contempt for the statements and sentenced him accordingly. In reversing, the Supreme Court stated, at page 555:

"We hold that in the context of this case petitioner's statements in summation did not constitute criminal contempt. The court's denial of the continuance forced petitioner to argue his own cause. He was therefore clearly entitled to as much latitude in conducting his defense as we have held is enjoyed by counsel vigorously espousing a client's cause.***There is no indication, and the State does not argue, that petitioner's statements were uttered in a boisterous tone or in any wise actually disrupted the court proceeding. Therefore, 'The vehemence of the language used is not alone the measure of the power to punish for contempt. The fires which it kindles must constitute an imminent, not merely a likely, threat to the administration of justice. The

190

danger must not be remote or even probable; it must immediately imperil. The law of contempt is not made for the protection of judges who may be sensitive to the winds of public opinion. Judges are supposed to be men of fortitude, able to thrive in a hardy climate.' ***'Trial courts must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice.'***"

The circumstances in which defendant made the offensive statement are relevant in determining whether defendant's conduct was of such nature as to amount to criminal contempt. In the instant case, the record fails to disclose that the statement constituted "an imminent threat to the administration of justice." The judge stated that he was about to sentence the defendant on the disorderly conduct charge "***as soon as (he) had some order in the courtroom." It is apparent from the judge's statement that the courtroom was somewhat less than orderly when the initial, off the record, inquiry was made. The record does not indicate that the defendant's statement was loud or boisterous or otherwise disruptive of the court's proceeding. After defendant directed his comment to the court, the judge asked him to verify it, which he did, after the jury had withdrawn from the courtroom.

Under these circumstances, defendant's remark, while unwise, insolent and probably personally insulting to the judge, was not of a nature which "***tends to bring the administration of the law into disrepute and disregard or otherwise tends to impede, embarrass or obstruct the court in the performance of its functions." *In re Green* (1961), 172 Ohio St. 269. (Paragraph one of the syllabus.)

We have found no cases supporting summary criminal contempt for a statement as mild as the one in this case, occurring singly, at the end of the proceeding, where the only apparent effect was to ruffle the judge's sensibilities.

While displays of ill-mannered conduct are not condoned by this court, neither are they punishable under the law of direct contempt unless they pose an imminent threat to the administration of justice. We are certainly sympathetic to the judge who was exposed to the biting remark of the defendant, but the administration of justice is best served by restricting the power of summary direct contempt to that

conduct which tends to impede, embarrass or obstruct the court in the performance of its function rather than permitting it to be applied to a single comment that only tends to indicate a personal, although not disruptive, feeling of contempt by the defendant towards the court and the system of justice. To allow a summary conviction of direct contempt with the offended judge being judge, jury and executioner, with the power to impose a severe jail sentence, poses too great a threat of arbitrary treatment to permit it to be based on less. The instant case is a good example. The defendant both in his in-court attitude and out-of-court conduct probably radiated contempt for the institutions of government and, to cap it off, had been acquitted of the major charge. The stage was set for unintentionally using summary contempt for purposes for which it was not designed.

Lest defendants feel that this decision gives them a *carte blanche* nonpunishable right to insult the court at will, it should be pointed out that the type of remark made herein may properly be considered by the court in determining the sentence to be imposed for any charge upon which defendant is convicted (admittedly not a very satisfactory option in this case as the maximum penalty for the charge upon which defendant was convicted was $100 and costs). Also, this decision does not alter the basic law of direct contempt and is restricted to the facts of this case. Repeated insulting remarks during an earlier part of the trial may well give rise to a summary conviction of direct contempt where those actions immediately imperil the further progress of the trial. Also, remarks of a more derogatory nature may well fall within the definition of criminal contempt.

Moreover, even if the offensive statement had constituted contempt, since it occurred at the end of the proceedings and was directed personally to the trial court, the trial court should have referred the matter to another judge since his objectivity could reasonably be questioned. See American Bar Association Project on Standards for Criminal Justice, The Function of the Trial Judge 95, Section 7.5 (1972). There was no need to summarily punish the defendant to protect the integrity of the ongoing proceeding as that proceeding had ended, with the exception of imposing the sentence for the disorderly conduct conviction.

The third assignment of error is sustained and the case is remanded to the trial court to vacate the ten day jail sentence for direct contempt.

Defendant was convicted of disorderly conduct, a minor misdemeanor, after the charge was reduced on the day of trial from disturbing a lawful meeting, a fourth degree misdemeanor. On the day defendant was sentenced, the fine and costs were paid in full. For that reason, appellee has moved to dismiss the appeal for mootness based upon *State* v. *Wilson* (1975), 41 Ohio St. 2d 236. In *Wilson,* the defendant was convicted of carrying a concealed weapon and assessed a fine and costs which, as in the instant case, was promptly paid. In sustaining the state's motion to dismiss the appeal as moot, the Supreme Court, in its syllabus, held as follows:

"Where a defendant, convicted of a criminal offense, has voluntarily paid the fine or completed the sentence for that offense, an appeal is moot when no evidence is offered from which an inference can be drawn that the defendant will suffer some collateral disability or loss of civil rights from such judgment or conviction."

Defendant attempts to distinguish *Wilson* by stating that a suggestion has been made in the record that there may be collateral disability suffered by the defendant in that the conviction may affect his opportunities for advancement at his place of employment, his ability to be elected as a candidate for public office, his ability to hold office in numerous private organizations to which he belongs, or to obtain bonding in handling funds for private organizations.

Those claimed disabilities are not supported by evidence other than being suggested in the brief of defendant, nor are they collateral disabilities different in kind or degree than those inherently applicable to any defendant convicted of a crime. In the instant case, the crime of which defendant was convicted was a minor misdemeanor of a nature that would appear to have none of the effects claimed. As a practical matter, the claimed effects would be much more likely to stem from the actions of defendant, rather than the conviction of the minor misdemeanor of disorderly conduct. Moreover, as indicated in Justice Celebrezze's dissent in *Wilson,* a case of much greater severity than the conviction herein, defendant had made similar claims in his memoran-

dum to the Court of Appeals as were made in the memorandum in this case. If merely claiming the hypothetical effects of a conviction of a minor crime is sufficient to avoid the doctrine of *Wilson,* then the case has no future application.

Defendant secondly contends that the payment of the fine and costs on the day of conviction was not voluntary, in that the trial court conditioned his release upon such payment as well as the appeal bond, which was set to stay the imposition of the jail sentence. The record, however, does not support that contention. In any event, had the trial court refused a stay, upon proper application to this court, a stay would have been granted pending an appeal in order to prevent the appeals from becoming moot in the interim.

Defendant's second assignment of error is overruled as being moot.

Finally, defendant contends that the Court of Common Pleas erred in overruling his affidavit of prejudice against the trial court.

Since the appeal on the disorderly conduct charge is moot and the contempt citation has been finally reversed in defendant's favor, any error in overruling defendant's affidavit of prejudice against the trial judge is harmless.

The first assignment of error is overruled.

The third assignment of error is sustained, and the first and second assignments of error are overruled. The finding of direct contempt by the defendant is reversed and the conviction of disorderly conduct is sustained. The case is remanded to the trial court for further procedure consistent with this decision.

*Judgment affirmed in part*
*and reversed in part.*

REILLY, J., concurs.

WHITESIDE, J., concurs in part and dissents in part.

WHITESIDE, J., concurring in part and dissenting in part. Although I concur in the judgment insofar as it affirms the conviction of disorderly conduct and reverses the conviction of contempt, I must respectfully dissent from the judgment to the extent that it directs that defendant be discharged from the contempt order and would remand for a

new trial upon that charge. Also, in keeping with App. R. 12(A), I feel that the first assignment of error should be considered on its merits rather than overruled as harmless, if error.

By the first assignment of error, defendant contends that the Common Pleas Court (not the trial court) erred in overruling his affidavit of prejudice.

The record reflects that on March 1, 1978, the trial court entered an order stating that the defense would be conducted by defendant's attorneys, found to be competent counsel, and that defendant would not be permitted to participate as additional "counsel" noting that he is "not entitled to hybrid representation." In the order, the trial court noted that it had come to its attention from newspaper articles and statements of defendant "that the defendant intends to use his trial on these cases as a means of social protest and that defendant is not concerned with whether he is convicted of these charges."

On March 10, 1978, defendant filed his affidavit of prejudice which was founded, *inter alia,* upon this order, stating in part that the order was based upon newspaper articles and other information without allowing defendant to respond thereto. The record includes a transcript of proceedings of a hearing held March 2, 1978, at which defendant was permitted to make statements to the court, after the court related the newspaper articles in question. Defendant stated (March 2):

"No, Sir, I'm not going to deny that I made that statement. As statements go in the press, they are reasonably accurate; however, it is taken slightly out of context. I didn't make this statement in regard to my role as co-counsel.***"

Defendant further stated, referring to a newspaper article (March 2):

"***The first sentence of the third paragraph, 'Through the incident Conliff hopes to force a confrontation with the governor by putting him on the witness stand at the assault trial. Conliff has already received permission to serve as his own counsel and he intends to put Rhodes to the boards.' Now, that was one statement that I made to them. Along about 30 minutes later, in the course of a give and take conversation, I said—and I say this is an accurate quote—and I

don't remember what the question had to do with, but it didn't have to do with representation. At that time, I said, you know—'cause I think the question now that I think a bit, was pretty much that, "Are you planning on going to jail?" And at that time, I responded, "I don't care much whether I get convicted or not." ' "

The affidavit of prejudice further alleged that the trial judge was prejudiced against defendant and in favor of the alleged victim of the alleged crime, Governor James A. Rhodes. The affidavit alleged that the trial judge was appointed by Governor Rhodes, and the judge has the Governor's picture in his office; that the trial judge had, at an earlier hearing, admonished defendant that the judge "would not allow a circus to be conducted in his courtroom," also as a result of a newspaper article; that the trial judge had limited a subpoena issued to Governor Rhodes but had later reconsidered, but had stated that "Mr. Rhodes by virtue of his office is different than other witnesses and that special consideration need be given to the demands of his office in determining whether he would be required to appear"; and that the trial judge had refused to reduce defendant's $700 bond previously set by another judge, the bond being $500 in one case and $200 in the other.

Underlying the affidavit of prejudice is a patent misunderstanding as to the nature of the crime with which defendant was charged (and ultimately found not guilty) in the assault case, as indicated by various statements and motions of defense counsel as well as by statements of defendant.

In the assault case, the charge was that defendant "did knowingly attempt to cause physical harm to another to wit: Governor James A. Rhodes, by means of striking him about the head and shoulder with a pie, in violation of R. C. 2903.13(A)." Later the charge was amended to delete the words "attempt to."

R. C. 2903.13(A) provides:

"No person shall knowingly cause or attempt to cause physical harm to another."

R. C. 2901.01(C) defines the nature and extent of the physical harm necessary to constitute a violation of R. C. 2903.13(A), by stating:

"Physical harm to persons' means any injury, illness, or

other physiological impairment, *regardless of its gravity or duration.*" (Emphasis added.)

Under this definition, the temporary discomfort necessarily inherent as the result of being struck on the head and shoulder by a pie is sufficient to constitute the physical harm element of R. C. 2903.13(A).

Defendant, however, filed numerous motions and made many statements, both through counsel and on his own behalf, in an apparent effort to indicate that the physical harm was not of a serious nature and not of long duration. This was irrelevant to the issue of defendant's guilt as apparently contended by defendant, although perhaps relevant to punishment in the event defendant had been found guilty. Defendant's counsel, in support of a motion to dismiss, contended that it could not reasonably be found "that a banana cream pie would cause injury to a person with whom it had contact." (January 23.) Defendant stated: "***I didn't assault anybody. I threw a pie at a man.***" (March 2.) Many of the situations referred to in the affidavit of prejudice were apparently prompted by this misunderstanding that a more serious injury is necessary to constitute the physical harm element of R. C. 2903.13(A). The trial judge, however, rather than strictly limiting defendant to the statutory definition, apparently permitted him much greater latitude, at least in trial preparation, in view of the rulings and statements that are in the record, which tends to negate the prejudice alleged. Had the nature of the charge been fully understood, perhaps many of the motions, rulings, and comments would have been avoided.

As to affording the Governor greater deference than might be afforded an ordinary citizen, it must be remembered that the Governor, whoever he may be, is not an ordinary citizen in his official capacity. Rather, he is the Governor, the chief executive of the state. Under the doctrine of separation of powers, courts are required to give some consideration to the Governor in his official capacity so as not to unduly interfere with the performance of his official duties. There is no indication in the record that the trial judge did more or that he gave special consideration to the alleged victim in his personal or private capacity.

From the record before us, there appears to be no merit to the affidavit of prejudice. Although the trial judge may have erred procedurally with respect to some of his rulings, such error does not support an affidavit of prejudice.

Furthermore, it is doubtful that this issue is properly before us upon this appeal inasmuch as, pursuant to R. C. 2937.20, disqualification proceedings are to be conducted in the Common Pleas Court. See, however, *White* v. *Hicks* (1961), 118 Ohio App. 56, holding an order of disqualification not to be appealable and implicitly suggesting an appeal from the final judgment of the municipal court. However, assuming the issue is properly before us, the first assignment of error should be overruled.

With respect to the third assignment of error, I concur generally in the reasoning of the majority for the sustaining of that assignment. The record before us is insufficient to demonstrate a direct contempt punishable by a summary action of the trial judge. However, I cannot concur in the finding that the record is insufficient to support a charge of contempt.

Defendant's ounce-of-flesh comment presumably was a play on the infamous pound-of-flesh contract involved in Shakespeare's *Merchant of Venice.* As such, depending upon the totality of the circumstances, it could constitute such an attack upon the administration of justice as to constitute punishable contempt, and more than a mere personal comment directed at the judge. Such factors as defendant's tone of voice, facial expression, if any, and physical gestures, if any, are not in the record. Nor does the record reflect whether those present could easily hear the remark. Although the court reporter apparently did not record the remark, she also did not record any statements or comments by others which were probable in light of the trial judge's statement: "as soon as we have some order in the courtroom." A charge of contempt under such circumstances should not be finally determined except upon a full ventilation of the facts. *In re Little* (1972), 404 U. S. 554, indicates that words spoken in the courtroom can constitute contempt under appropriate circumstances, stating with respect to the defendant's calling the trial judge a vile name: "this language

in a courtroom is, of course, reprehensible and cannot be tolerated."

However, in accordance with *Mayberry* v. *Pennsylvania* (1971), 400 U. S. 455, the contempt proceedings should be a public trial before a judge other than the one who is the subject of the alleged contemptuous remark. I would remand for such a public trial.