JOURNAL ENTRY AND OPINION
This appeal arises from direct criminal contempt proceedings in the juvenile court against attorney Anne Veneziano. On appeal, she assigns the following as error for our review:
 THE COURT ABUSED ITS DISCRETION IN HOLDING APPELLANT IN DIRECT CRIMINAL CONTEMPT OF COURT TWICE.
After reviewing the arguments of the parties and the pertinent law, we affirm the judgment of the trial court.
During a child custody case, Attorney Anne Veneziano received two contempt citations from Judge Janet Burney. Prior to the hearing of the case, Veneziano had filed with the Ohio Supreme Court an affidavit of prejudice against Judge Burney, which the Supreme Court denied. At the hearing, the following discourse took place between the judge and the attorney, which prompted the first contempt citation:
THE COURT: Do you have any questions, Ms. Veneziano?
MS. VENEZIANO: Yes, I do.
THE COURT: Briefly.
 MS. VENEZIANO: Your Honor, I have a full set of questions based on Ms. Farley's examination.
 THE COURT: All right. Understand that ordinarily, and I explained this the last time we were here, that the cycle of examination goes cross for the Agency, cross for the parent and the guardian-ad-litem and the cross examination * * * re-cross.
* * *
 Ordinarily it would be based upon what Mr. Millas asked, okay. So you would have the re-direct and you would have done the re-cross based upon his second examination.
MS. VENEZIANO: What about her examination?
 THE COURT: That's not part of the cycle. That's not part of the cycle.
MS. VENEZIANO: Who's determining the —
 THE COURT: I am, ma'am. And I explained this the last time. Do you recall the last time we went through this?
MS. VENEZIANO: Your Honor —
THE COURT: I'm saying to you hold it.
MS. VENEZIANO: — I have a right to do (inaudible)
THE COURT: Hold it. Ma'am —
MS. VENEZIANO: — and you cannot determine (inaudible)
 THE COURT: If you don't stop interrupting me I will hold you in contempt of Court.
MS. VENEZIANO: Well then do it.
 THE COURT: Hold it. I will hold you in contempt of Court.
 MS. VENEZIANO: Then do what you have to do, Your Honor. This is my job and you're interfering with my doing it.
 THE COURT: Listen. Ma'am, listen. Now stop it, Ms. Veneziano. I am warning you if you do this again I will hold you in contempt of Court.
MS. VENEZIANO: Your Honor —
THE COURT: Sit down. Sit down.
 MS. VENEZIANO: — you are not going to interfere with my doing my job and I want it on the record.
 THE COURT: I'm talking, Counsel. I will hold you in contempt.
MS. VENEZIANO: That's fine.
THE COURT: You are in contempt of Court —
MS. VENEZIANO: That's fine. Do what you have to do.
 THE COURT: — and I'm fining you two hundred and fifty dollars ($250).
MS. VENEZIANO: You don't care. I'm here —
THE COURT: Now, quiet.
MS. VENEZIANO: — to represent my client.
 THE COURT: Quiet, quiet. Two hundred and fifty dollars ($250), ma'am.
 MS. VENEZIANO: You're not going to interfere with my representation, Your Honor.
At this time, the trial court warned Veneziano she would be found in contempt again if she continued to raise her voice or interrupt the court.
The second contempt citation occurred during Veneziano's examination of a witness when, according to Veneziano, she asked a yes or no question and objected that the witness's answer was not responsive. The trial court instructed Veneziano to let the witness finish her answer and to stop raising her voice to the court. Veneziano was then found in contempt a second time. At one point, Veneziano threw her pad of paper down in frustration and the court requested that she stop throwing things in the courtroom. During Veneziano's examination of the witness, the court instructed Veneziano to stop raising her voice six times.
Veneziano argues Judge Burney abused her discretion in holding her in contempt. In substance, Veneziano argues her conduct did not rise to the level of contempt. She implies that the Judge was responding to the affidavit of prejudice and hurt feelings. Additionally, she argues the trial court's limitation on her ability to cross examine was incorrect and inhibited her from representing her client. We disagree.
Our standard of review is abuse of discretion. Consequently, we will give great deference to the trial court in these matters. Our concern is whether the evidence establishes guilt beyond a reasonable doubt for contempt, which means that the offending conduct must constitute an imminent threat to the administration of justice.[1]
Direct contempt has been defined as misbehavior committed in the presence of or so near the court as to obstruct the due and orderly administration of justice, and punishment may be imposed summarily without the filing of charges or the issuance of process.[2]
Contempt is either civil or criminal in nature. Civil contempt seeks to coerce compliance while criminal contempt must be examined in determining whether the contempt was civil or criminal. Criminal contempt is usually characterized by an unconditional prison sentence or fine.[3]
Veneziano suggests that at best her conduct was ill-mannered and the judge was reacting from hurt feelings. The historical law in Ohio is that a display of ill-mannered conduct is not punishable by contempt, but conduct that poses an imminent threat to the administration of justice is punishable.[4]
Here, the lawyer's conduct was much more than ill-mannered conduct. The first contempt occurred because the attorney continued to interrupt the judge. The court said specifically if you don't stop interrupting me, I will hold you in contempt. The attorney then replied that the judge should hold her in contempt. But, even after the attorney told the judge to hold her in contempt, the court did not issue an order of contempt until the next exchange. The court asked the attorney to sit down, not to talk while the judge was talking. When the attorney continued, the trial judge issued the first contempt.
In Coniff,[5] the court stated the following:
 Because of the summary nature of a direct contempt conviction, the court must be careful to guard against confusing actions or words which are contemptuous to the judge's personal feelings or sensibilities and actions or words which constitute punishable, criminal contempt of a summary nature because of posing an actual or imminent threat to the administration of justice. In this regard, the words of the United States Supreme Court in the case of In re Little (1972), 404 U.S. 553, are instructive. In Little, the defendant who argued his case pro se had stated in the closing argument to the jury that the trial judge was biased, had prejudged the case and that he, the defendant, was a political prisoner. At the conclusion of the trial, the trial court found defendant in direct contempt for the statements and sentenced him accordingly.
In Little, the Supreme Court went on to point out that Little's conduct was not boisterous or disruptive of the proceedings. Suggesting that boisterous and disruptive conduct could rise to the level of contemptuous behavior. The fires which kindle contemptuous behavior, the court said, must be imminent, not merely likely to threaten the administration of justice. We read this to mean conduct that is actually occurring in the court's presence that hinders the court's action. Here, the court was constantly admonishing the lawyer to stop interrupting and to sit down, or be held in contempt.
We agree that the vehemence of the language used is not alone the measure of the power to punish for contempt.[6] Here, the trial court repeatedly asked the attorney to sit. Also, the record showed the attorney continued to interrupt the trial judge. This conduct was otherwise disruptive to the court proceedings, and under Coniff, an obstruction of the orderly administration of justice. At the time that the conduct occurred, justice was obstructed and that is the measure that we use.
In a case similar to this, the Ohio Supreme Court upheld an attorney's contempt when the attorney disregarded the trial court and continued to be otherwise disruptive.[7]
Additionally, we will not address whether the trial court was correct or incorrect in her initial definition of the order or the breadth of cross-examination. If the trial court was in error, the proper recourse was to object and make a record for appeal. At no time during the discourse with the trial court did the attorney object and preserve the error.
We, therefore, conclude the trial court did not abuse its discretion in holding Veneziano in contempt on either occasion. Accordingly, Veneziano's assigned error is overruled and the judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant her costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Juvenile Court Division of Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J., and ANNE L. KILBANE, J., CONCUR.
[1] Cleveland v. Heben (1991), 74 Ohio App.3d 568, 599 N.E.2d 766.
[2] R.C. 2705.01.
[3] Denovchek v. Bd. Of Trumbull Cty. Commrs. (1988), 36 Ohio St.3d 14,520 N.E.2d 1362.
[4] State v. Coniff (1978), 61 Ohio App.2d 185, 401 N.E.2d 469.
[5] Id. at 189.
[6] Id., citing Little.
[7] See, also, State v. Wilson (1972), 30 Ohio St.2d 312, 285 N.E.2d 38, certiorari denied (1972), 409 U.S. 1047, 93 S.Ct. 522, contempt was affirmed where attorney's unnecessary repetition of objections and requests, and disregard of the court's repeated orders to be seated interrupted the business of the court.