JOURNAL ENTRY AND OPINION.
{¶ 1} This cause came on to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1, the trial court records and briefs of counsel.
 {¶ 2} The appellant, Vincent F. Gonzalez, Esq., appeals the judgment of the Bedford Municipal Court, which found him in contempt of court and fined him $250.
 {¶ 3} Gonzalez is an attorney in good standing with the State of Ohio. He was retained by defendant, Luis Gomez, to represent him at his initial arraignment hearing on September 18, 2002 with regard to a pending assault charge. After entering a plea of not guilty on behalf of Gomez and refusing the court's request for a speedy trial waiver, Gonzalez was informed by the lower court that it was immediately proceeding to a temporary protection order hearing against Gomez. We note, the record reflects that the prosecutor did not make either an oral or written motion for a temporary protection order on the record, but there is some indication that the prosecutor did in fact present such motion off the record. Nevertheless, the evidence is clear that Gonzalez was not notified that a hearing would be conducted at any time prior to the arraignment proceedings.
 {¶ 4} The lower court proceeded to conduct the temporary protection order hearing permitting the prosecution to question the sole witness. Additionally, the court questioned the witness with regard to the events in question. However, at the conclusion of questioning, the lower court denied Gonzalez's request to cross-examine the witness and granted the temporary protection order. In an effort to protect his client's interest, Gonzalez attempted to question the lower court as to its reasoning behind denying him the right to cross-examine the witness. The lower court declined to state a reason and warned Gonzalez that he would be held in contempt if he continued with his present course of action. Despite the warning, Gonzalez was found to be in contempt by the lower court, jailed and fined $250 for his actions.
 {¶ 5} Gonzalez appeals and presents two assignments of error for this court's review. The assignments of error state:
 {¶ 6} "I. The Court Abused It's (Sic) Power In Citing The Attorney For Objecting To The Court's Arbitrary Ruling Denying The Defendant An Opportunity To Question The Witness In A Motion For Protection Order."
 {¶ 7} "II. The Court Acted Arbitrarily And Abused Its Power In Citing The Attorney For Contempt Of Court For A Reply To A Direct Question Posed By The Court."
 {¶ 8} Having a common basis in both law and fact, the appellant's two assignments of error will be addressed together. Essentially, the appellant argues that the lower court abused its discretion in finding him in contempt of court and imposing a fine.
 {¶ 9} The law of contempt is intended to uphold and ensure the effective administration of justice, secure the dignity of the court, and to affirm the supremacy of law. Cramer v. Petrie (1994), 70 Ohio St.3d 131. The decision of whether to find one in contempt of court rests in the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion. State v. Kilbane (1980), 61 Ohio St.2d 201, paragraph one of the syllabus.
 {¶ 10} Furthermore, the law of contempt categorizes contempt into direct contempt and indirect contempt; it also distinguishes between civil and criminal contempt. In re Williams (Aug. 23, 1990), Cuyahoga App. No. 56908.
 {¶ 11} In reviewing a contempt conviction, a court must first determine whether appellant's conduct constituted direct or indirect contempt. Second, the sanction imposed by the trial court must be scrutinized to determine whether the court used its civil or criminal contempt powers. Kilbane at 201. A person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice commits direct contempt, and the judge may summarily punish the offender. R.C. 2705.01. Contempts committed outside the presence of the court are indirect in nature. R.C. 2705.02.
 {¶ 12} The purpose of the sanction imposed by the court indicates whether the contempt is civil or criminal. The sanction in civil contempt is intended to coerce the contemnor to comply with the court's orders. The sanction in criminal contempt is intended to punish the contemnor.Kilbane at 204-205.
 {¶ 13} In applying this analysis to the instant matter, the record indicates that the conduct of the appellant that resulted in the contempt finding occurred in the presence of the court; therefore, it involves direct contempt. Additionally, the record indicates that the $250 fine did not attempt to coerce the appellant to comply with a court order, but was punitive in nature; therefore, the contempt was criminal in character. Accordingly, the contempt conviction herein concerns a direct criminal contempt of court.
 {¶ 14} R.C. 2705.01 empowers a court to summarily punish an offender, it states: "A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." In City of Clevelandv. Heben (1991), 74 Ohio App.3d 568, this court reiterated the standard of conduct that warrants a finding of direct criminal contempt, stating:
 {¶ 15} "The determination of contempt is left to the sound discretion of the trial judge. However, the accused's guilt must be affirmatively shown in the record and the offending conduct must constitute an imminent threat to the administration of justice. State v.Conliff (1978), 61 Ohio App.2d 185. "The administration of justice is best served by restricting the power of summary direct contempt to that conduct which tends to impede, embarrass or obstruct the court in the performance of its function." Id. at 190-191.
 {¶ 16} A review of the record indicates that the appellant attempted to cross-examine the sole witness at the temporary protection order hearing, but the lower court summarily refused to permit the appellant to question the witness. The lower court issued the temporary protection order and ordered the appellant's client to sign the order. The appellant informed the lower court that he would instruct his client to sign the order, but over objection. The lower court ordered appellant's client to sign the order or face being jailed. Next, the appellant attempted to write the words "signed over objection" on the order in an effort to protect the record. The lower court denied the appellant's attempt to write the words "signed over objection" on the order, and threatened to jail the appellant if he continued with his actions. Thereafter, appellant's client signed the order; however, while signing the order, the following exchange occurred between the lower court and appellant:
 {¶ 17} "APPELLANT: Your Honor, I will advise the Court that we have acknowledged this Court that we will not —
 {¶ 18} "COURT: He can sign it or I can hold him until he signs it, your choice.
 {¶ 19} "APPELLANT: We'll sign it over objection, and I would like that on the record also.
 {¶ 20} "COURT: And it is on it.
 {¶ 21} "COURT: Don't write on that. Don't you dare write on that. If you write on there, I'm going to hold you in contempt. He can sign it or he can stay, your choice Mr. Gonzalez. But you're not writing on the order. You don't write on other orders of the Court and you don't write on this one. Did you understand?
 {¶ 22} "APPELLANT: I understand, your Honor. Your Honor —
 {¶ 23} "COURT: That's as far as you get. One more word — sign it.
 {¶ 24} "APPELLANT: I'll get my client to sign it. Yes, your honor.
 {¶ 25} "COURT: I have nothing to say, that's right.
 {¶ 26} "APPELLANT: I thought we were still in America, apparently we're not.
 {¶ 27} "COURT: All right, now you're in contempt.
 {¶ 28} "APPELLANT: Thank you.
 {¶ 29} "COURT: Holding cell. You're not going to say that kind of stuff to me. You have the right to go to the court of appeals. I noted every one of your objections on the record. Holding cell.
 {¶ 30} "APPELLANT: Thank you, your Honor —
 {¶ 31} "COURT: Holding cell now."
 {¶ 32} The appellant was then placed in the holding cell with the other defendants, and approximately one hour later, the appellant was again brought before the lower court and the following exchange occurred:
 {¶ 33} "COURT: Mr. Gonzalez you're not going to disparage the Court; you're going to respect the Court. If you don't like what the Court does, you have recourse. But that's what's going to happen here, do you understand?
 {¶ 34} "APPELLANT: I understand. I am here to protect my client's interests. I was put in custody trying to protect my client's —
 {¶ 35} "COURT: Because you made remarks to disparage the Court.
 {¶ 36} "APPELLANT: Your Honor. I don't believe that I did that. I thought we were in America. I don't think I said anything that's disparaging to this Court or to —
 {¶ 37} "COURT: It was disparaging.
 {¶ 38} "* * *
 {¶ 39} "APPELLANT: * * *, your Honor; that's what I think. It was not meant to disparage you. However, I take the practice of law very seriously. I take my responsibility to my client very seriously. And when the judge abuses the law by giving me a hearing without giving me the opportunity to ask any questions at that hearing, I consider that to be a violation of the law.
 {¶ 40} "COURT: That's why I told you you can go to the court of appeals, which is a right in America.
 {¶ 41} "APPELLANT: It's also my right to demand my client's right to a hearing and to present evidence and to cross-examine —
 {¶ 42} "COURT: Not at that hearing.
 {¶ 43} "APPELLANT: In that hearing and in the rest of the State of Ohio, I have a right to cross-examine, but not in this courtroom?
 {¶ 44} "COURT: I don't think that's true.
 {¶ 45} "* * *
 {¶ 46} "COURT: You are found in contempt. The fine is $250.
 {¶ 47} "APPELLANT: We'll appeal that decision. So, therefore, I wish to stay that order pending an appeal on that. Thank you very much.
 {¶ 48} "COURT: You can get the court of appeals to tell you to stay on it. Thank you, sir.
 {¶ 49} "APPELLANT: Your Honor, I need to file a motion and a motion to stay. And I need —
 {¶ 50} "THE COURT: You can do all that from jail. Thank you, sir; we're done.
 {¶ 51} "* * *"
 {¶ 52} Given the state of the record, and mindful that the power of summary direct contempt should be restricted to a conduct that tends to impede, embarrass or obstruct the court in the performance of its functions, we fail to perceive an imminent threat to the administration of justice by appellant's conduct sufficient to warrant a finding of direct criminal contempt. See State v. Conliff, supra. Although the appellant's conduct was arguably improper, it did not pose an imminent threat to the administration of justice sufficient to warrant a finding of direct contempt.Therefore, we hereby reverse the judgment of the lower court holding the appellant in direct criminal contempt of court. Judgment reversed.
JAMES J. SWEENEY, J., and COLLEEN CONWAY COONEY, J., concur.