[Cite as *State v. Puleo*, 2022-Ohio-4040.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO,<br><br>Plaintiff-Appellee,<br><br>- vs -<br><br>ALBERTA J. PULEO,<br><br>Defendant-Appellant. | CASE NO. 2021-L-131<br><br>Criminal Appeal from the<br>Willoughby Municipal Court<br><br>Trial Court No. 2021 CRB 00731 |

**O P I N I O N**

Decided: November 14, 2022
Judgment: Affirmed

*Richard J. Perez*, City of Willoughby Prosecutor, and *Leslie S. Johns*, Assistant Prosecutor, 4230 State Route 306, Suite 240, Willoughby, OH 44094 (For Plaintiff-Appellee).

*Robert T. McDowall, Jr.*, Robert T. McDowall Co., LLC, 415 Wyndclift Place, Youngstown, OH 44515 (For Defendant-Appellant).

THOMAS R. WRIGHT, P.J.

{¶1}    Alberta J. Puleo appeals the judgment sentencing her for disorderly conduct and contempt following a bench trial.  We affirm.

{¶2}    In 2021, Puleo was charged with disorderly conduct based on allegations that she repeatedly threatened to kill a neighbor who resides in a lot diagonally across from her in a mobile home park.  Puleo entered a not guilty plea, and the case proceeded to bench trial.

{¶3} At trial, Puleo several times interrupted proceedings by speaking out of turn. The trial court ultimately found Puleo guilty of disorderly conduct and found her in contempt of court due to her disruptions of the proceedings. The trial court deferred sentencing and ordered a victim impact statement, pre-sentence report, and mental health assessment. At sentencing, the court imposed a $75.00 fine, a 30-day period of confinement, suspended, and 18 months of probation with conditions on the disorderly conduct charge and issued a post-conviction no contact order. The court imposed a $150.00 fine and a 30-day period of confinement, suspended, on the contempt charge.

{¶4} In her sole assigned error, Puleo argues:

{¶5} "Defendant's conviction for direct contempt of court is unsupported by the record as none of her conduct demonstrates a wil[l]ful intent to defy the authority of the court or constituted an imminent threat to the administration of justice."

{¶6} "Contempt of court has been defined as 'conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions.'" *North Kingsville v. Maddox*, 11th Dist. Ashtabula No. 2001-A-0052, 2002-Ohio-7122, ¶ 14, quoting *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988).

{¶7} Contempt is divided into categories of civil/criminal contempt and direct/indirect contempt. *Maddox* at ¶ 14. There is no dispute that the present case involves direct criminal contempt because the purpose of the sanction was to punish the offender, and the conduct at issue occurred in the presence of the court. *See id.* "A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the

2

presence of or so near the court or judge as to obstruct the administration of justice." R.C. 2705.01.

{¶8} "Because the purpose of contempt proceedings is to uphold the dignity and authority of the courts, great deference is given to the judgment of the trial judge." *Maddox* at ¶ 15, citing *Denovchek* at 15. "The determination of what constitutes contempt of court is within the sound discretion of the trial court, and will not be reversed absent an abuse of the court's discretion." *Maddox* at ¶ 15, citing *Quirke v. Quirke*, 11th Dist. Ashtabula No. 92-A-1755, 1996 WL 586425, *3 (Sept. 20, 1996). "[A]n abuse of discretion is the trial court's '"failure to exercise sound, reasonable, and legal decision-making."'" *Ivancic v. Enos*, 2012-Ohio-3639, 978 N.E.2d 927, ¶ 70 (11th Dist.), quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8 Ed.2004).

{¶9} Here, the transcript contains several instances of Puleo interjecting indecipherable comments during the proceedings out of turn, and several instances of the trial court admonishing Puleo to refrain from further interruptions.

{¶10} With regard to the court's warnings directed at Puleo, during cross-examination of Puleo's neighbor, the following exchange occurred:

> [THE STATE]: Yeah, I'm objecting to the form of the question and her appreciation of the (inaudible).
>
> [PULEO]: Oh.
>
> THE COURT: All right. Okay. The objection is sustained. [Defense counsel's] going to ask a new question. And, Ms. Puleo, I'm only going to say this one time. Can you hear me clearly?
>
> [PULEO]: Yes, Your Honor.

3

THE COURT: Okay. Please do not –

[PULEO]: I know, I'm so sorry.

THE COURT: – show your –

[PULEO]: Emotions.

THE COURT: – displeasure, happiness, or any thoughts whatsoever about what the witness says or does. Okay. I've been listening to it since she got up here. I've not said anything. I'm only going to give you one time where I am letting you know.

[PULEO]: Yes, Your Honor.

THE COURT: If I have to say it a second time, that's going to be an issue. Do you understand?

[PULEO]: Yes, I do, Your Honor.

THE COURT: Excellent. Thank you.

{¶11} Subsequently, during the direct testimony of the officer who responded to the neighbor's home, the following exchange occurred after the officer indicated that he was unsure if there had been other complaints filed by the neighbor alleging that Puleo had harassed or threatened her:

[THE PROSECUTOR]: Okay. You have not been out there on any of them?

[THE OFFICER]: No.

[THE PROSECUTOR]: None at all?

[THE OFFICER]: No.

[PULEO]: (Inaudible).

[THE OFFICER]: On what type of call?

THE COURT: Hang on.

4

[DEFENSE COUNSEL]: I'm sorry. She was speaking to me, Your Honor.

[PULEO]: I was speaking to him, sir – ma'am.

[DEFENSE COUNSEL]: Hold on. Hold on. Your Honor, she was speaking to me.

THE COURT: It's not the first time since I gave her the warning that I'm hearing things over here. I have been –

[DEFENSE COUNSEL]: I understand.

THE COURT: – trying to ignore them.

[DEFENSE COUNSEL]: Your Honor, I apologize, but understand. She's trying to communicate with me and it's certainly difficult to do that, but she's assisting me in my – in the defense of the case by trying to communicate with me.

[PULEO]: I would communicate with him.

THE COURT: You can communicate with your lawyer. It's the communication relative to the answer of and/or response of a witness that is troublesome.

[PULEO]: Okay.

THE COURT: Don't do it again or I will hold you in contempt. Do you understand?

[PULEO]: Yes, ma'am, I understand.

{¶12} After the prosecution finished its closing rebuttal argument, the following exchange occurred:

THE COURT: All right. Thank you.

[PULEO]: (Inaudible).

THE COURT: I'll get to the contempt situation when we're finished here.

5

Case No. 2021-L-131

You've been repeatedly asked by me to stop, Ms. Puleo, and you've not followed my order. We'll deal with that when we're done here.

My question, [Prosecutor], under the –

[PULEO]: (Inaudible).

[DEFENSE COUNSEL]: Just stop.

[THE COURT]: – statute, the charging document alleges 2917. * * *

{¶13} After the court stated its findings that Puleo engaged in behavior constituting disorderly conduct, the following exchange occurred:

[PULEO]: You know, I –

THE COURT: Ms. Puleo, I'm not going to ask you again. If you don't stop talking, I'm going to have to take you down to a cell, ma'am. Please. All right. You're going to have a chance to speak.

[PULEO]: I have a chance to speak?

THE COURT: Ms. Puleo, at the appropriate time, yes, you will.

* * *

{¶14} Thereafter, the court and counsel discussed Puleo frequently contacting the police department:

THE COURT: I mean, she's calling the police department.

[THE PROSECUTOR]: Ridiculous.

THE COURT: With nonemergencies?

[THE PROSECUTOR]: All the time and she just yells and screams to the dispatcher. I mean, I have – I could email you all her calls. I can email it to probation. I'll send you a copy. It's ridiculous.

[PULEO]: You son of a bitch.

6

[THE PROSECUTOR]: They're saying Alberta –

THE BAILIFF: Oh, Ms. Puleo, I'm sorry. You're cussing now in the courtroom and that's un—

[PULEO]: You heard that?

THE BAILIFF: Yes.

THE COURT: I heard that, Ms. Puleo.

[PULEO]: I was talking under my breath.

THE COURT: Ms. Puleo, I can hear what you're saying.

[PULEO]: I apologize. I didn't know that. I just want to speak.

THE COURT: Ms. (Inaudible) is putting her in a cell and sending her for the night.

[DEFENSE COUNSEL]: I get it. She's obviously emotional.

THE COURT: There's something wrong. I mean –

[THE PROSECUTOR]: No, she's mean. She's very – you can be fooling. I mean, I've dealt with her for, what, 12 years or something like that?

[DEFENSE COUNSEL]: But as to this issue right here right here today with her cussing.

[THE PROSECUTOR]: Yeah, but she's just – can be so mean and nasty and she doesn't (inaudible).

[DEFENSE COUNSEL]: She's emotional. She's obviously has [sic] some issues going on. She's extremely emotional. I don't think she can – she believes that you can't hear what she's saying to herself or whatever. She was talking to me many times and it's just loud. I get that, but she's also an emotional person.

THE COURT: [Defense counsel]?

[DEFENSE COUNSEL]: And she's also in a tough position.

7

THE COURT: [Defense counsel], it just so happened to coincide with anything that a witness said that was not favorable when the – you know, I mean, look, it's – this is very – all right. I'm going to hear from you and then I'm going to address her.

[DEFENSE COUNSEL]: Yeah.

THE COURT: Okay. All right.

{¶15} Thereafter, Puleo addressed the court, and the following exchange occurred:

THE COURT: Ms. Puleo – Ms. Puleo, this is not an opportunity to just talk about –

[PULEO]: Well, [Puleo's neighbor] talked about all that other stuff that –

THE COURT: Ms. Puleo, is there anything that you want me to know before I impose sentence? You understand I'm going to sentence you now –

[PULEO]: Yes.

THE COURT: – for a criminal offense, and, Ms. Puleo, I am also going to address the contempt of court issue for ignoring my court order.

[PULEO]: Oh, my God. You really don't like me. I can't believe this.

THE COURT: Do you want to say anything –

[PULEO]: Okay. She's (inaudible).

[DEFENSE COUNSEL]: Alberta, you're going to make this worse.

THE COURT: – about –

[PULEO]: Okay.

THE COURT: – yourself that I should know before –

8

Case No. 2021-L-131

[PULEO]: Yes, you should know – okay. You want to know?

[DEFENSE COUNSEL]: About going to jail or not going to jail. That's what we're talking about.

{¶16} Thereafter, the court directed Puleo to have no contact with her neighbor while bond was continued, and the following exchange occurred:

THE COURT: If there wasn't [a no-contact order in place as a condition of bond], you are not to have any contact, Ms. Puleo, with [the neighbor]. Do not address her at all in any way whatsoever. Do not speak to her. Do not shout. Do not – nothing. There should be no communication.

[PULEO]: I never did.

[DEFENSE COUNSEL]: Just listen.

[PULEO]: It's like –

[DEFENSE COUNSEL]: Okay. Just listen.

[PULEO]: This is so unfair. She is a psychopath.

[DEFENSE COUNSEL]: Stop. Stop. Stop. Stop right now. Stop.

[PULEO]: I have suffered –

[DEFENSE COUNSEL]: Stop. Stop. Stop.

THE COURT: Okay.

[DEFENSE COUNSEL]: Stop.

THE COURT: So there's no contact. If I have to put you on a monitor to stay at your place, I'll do that.

[PULEO]: I know you will. Judge Corchion [sic] –

THE COURT: Okay. Now –

[DEFENSE COUNSEL]: Just stop.

9

Case No. 2021-L-131

THE COURT:  – the issue on the no contact is the distance, the proximity of where the housing is here.  So I'll say it again, if I told you the last time, if she's outside, you don't get to go outside.  Go out in the back area.  Stay away.

[PULEO]:  No.  No.  Why?

THE COURT:  That's how this works.  That is –

[PULEO]:  I didn't do anything.  She comes in any yard.  She comes in my home.  She makes false allegations.  I've lived there 41 years and now I got to go in the backyard because you believe [the neighbor]?

THE COURT:  Ms. Puleo –

[PULEO]:  That's not fair.  It's not fair.

THE COURT:  Ms. Puleo, we had a --

[PULEO]:  I can't sit in my backyard?

[DEFENSE COUNSEL]:  We're going to address it again.

THE COURT:  We've had a trial here.  I heard a lot of what's going on.

[PULEO]:  And I haven't told you everything.  I haven't told you everything.

THE COURT:  Ms. Puleo, this is my decision.

[PULEO]:  It's not – it's not fair.

THE COURT:  Well, that's how you feel and you're entitled to that.

[PULEO]:  That's my home.  That's my home.

THE COURT:  Ms. Puleo, stop –

[PULEO]:  I can't sit in the front yard?

THE COURT:  – now you're going to stop talking.

[PULEO]:  I can't cut my shrubs?

10

Case No. 2021-L-131

[DEFENSE COUNSEL]: Stop. Stop.

[PULEO]: She is always outside.

THE COURT: That's it. Take her. You're going to go sit now. I'm holding you in contempt of court. I've told to you stop talking over me. I have told to you stop with the witnesses. You refused to listen. You are in contempt of court. Have a seat.

[PULEO]: How do I cut my shrubs. Fine. I don't –

THE BAILIFF: (Inaudible).

THE COURT: Okay. I will –

(Audio recording file ended.)

THE BAILIFF: It just turned it off.

THE COURT: I will write up the what I've just said here. We will set for sentencing, okay, when the reports are back. This is a whole other problem. You can go down –

[DEFENSE COUNSEL]: Judge –

THE COURT: – you can go down and talk to her if you want – right. I mean, I don't know. I can't even get out what I need to say to make a record of what's going on here. There is clearly an issue, all right, and I'm aware of that, but I can't have this. It's – it's disruptive of the entire proceeding. I'm thinking about holding her overnight.

[DEFENSE COUNSEL]: Well, Your Honor, look, I appreciate –

THE COURT: Go ahead.

[DEFENSE COUNSEL]: I appreciate. It's clearly disruptive.

[THE PROSECUTOR]: (Inaudible) jail, Judge.

THE COURT: No.

Case No. 2021-L-131

[DEFENSE COUNSEL]: Which jail? I appreciate it's disruptive. I understand that. I saw it. I tried to address her.

THE COURT: Yes, I did.

* * *

{¶17} Defense counsel and the prosecutor then discussed with the court whether Puleo's behavior both in and out of court may be rooted in mental health issues. Thereafter a recess was held, and when the court came back on the record, it stated the following:

> All right. It's a direct contempt. I'm making the finding. It was done in my presence, presence of others, disruptive, showing disregard, disrespect for the authority, (inaudible) law, embarrasses, impedes, and obstructs the Court in performing its functions and it was a total disregard for my order. In fact, she said she wasn't going to do that. I mean; right? That's literally what was said. So she wasn't going to follow my bond condition because we were going to delay this in the no contact. So we have that problem, we have the contempt throughout the course of the trial, which I had to tell her multiple times. Luckily there's no jury here. It's a bench. So I can easily sift through that distraction when needed, but I'm finding that she is in contempt of court and now the question is should she be given a bond or should she remain in the jail so the evaluation can be done and handled that way.

{¶18} In a judgment entry setting forth its guilty verdict, the trial court noted:

> Throughout the course of the bench trial, the Court had to admonish and instruct the Defendant regarding her conduct and statements through the Court proceedings. The Court ultimately found Defendant in direct contempt of Court, as her conduct was an impediment and obstruction to the Court in performing its function and was a disregard of judicial orders.

{¶19} On appeal, Puleo maintains that the contempt finding was improper because her behavior did not amount to an "imminent threat to the administration of

12

Case No. 2021-L-131

justice." In support, Puleo relies on *State v. Conliff*, 61 Ohio App.2d 185, 401 N.E.2d 469 (10th Dist.1978) and *In re Brannon*, 2d Dist. Montgomery No. 19619, 2003-Ohio-4423.

{¶20} In *Conliff*, the defendant was charged with assault and disorderly conduct following allegations that he threw a banana cream pie at the governor. *Conliff* at 186. The defendant was acquitted of the assault charge but found guilty of disorderly conduct and criminal contempt of court. *Id.* at 185. The contempt charge arose from the defendant's remarks after the jury was excused, as explained in the record:

> "The Court: Let the record show that Mr. Conliff has just asked me if I was going to sentence him on the charge that was before me for consideration, and I told him that, yes, I was, as soon as we had some order in the courtroom. And Mr. Conliff asked me if I wanted my ounce of flesh or blood, I forget now which one it was.
>
> "Mr. Conliff: It was flesh.
>
> "The Court: If I wanted my ounce of flesh.
>
> "Mr. Conliff: I thought we were adjourned. I was bringing it to your attention.
>
> "The Court: No, I had not forgotten. But, Mr. Conliff, it makes no difference what you think of me or my decision or my conduct of the trial. As a judge, as long as I am here in this courtroom, I am entitled to the respect of a judge. And your last statement is one of contempt, and I find you in contempt of this Court. And having found you in contempt, I sentence you to ten days in the county jail."

*Conliff* at 187-88. On appeal, the Tenth District explained:

> The record supplied this court shows no other indications of contemptuous behavior on the part of the defendant during the three[-]day trial. Moreover, the record does not disclose that defendant's question to the court was uttered in a loud or boisterous tone or that it actually disrupted the court proceeding, which as a matter of fact, had been concluded with the exception of sentencing the defendant on the disorderly conduct charge.

13

*Id.* at 188.

{¶21} The Tenth District reversed, noting that "[b]ecause of the summary nature of a direct contempt conviction, the court must be careful to guard against confusing actions or words which are contemptuous to the judge's personal feelings or sensibilities and actions or words which constitute punishable, criminal contempt of a summary nature because of posing an actual or imminent threat to the administration of justice." *Id.* at 189. The *Conliff* court held that "[w]hile displays of ill-mannered conduct are not condoned by this court, neither are they punishable under the law of direct contempt unless they pose an imminent threat to the administration of justice." *Id.* at 190. The Tenth District limited its decision to the facts of that case, which involved a "single comment that only tend[ed] to indicate a personal, although not disruptive, feeling of contempt by the defendant towards the court and the system of justice" where the trial "proceeding had ended, with the exception of imposing the sentence for the disorderly conduct conviction." *Id.* at 191.

{¶22} *In re Brannon*, 2003-Ohio-4423, involved a trial court's finding that defense counsel was guilty of contempt where counsel requested the trial court judge keep her voice down when the judge instructed the attorneys to not argue during a suppression hearing. On appeal, the Second District determined that record failed to support the trial court's findings that defense counsel had "repeatedly" interrupted opposing counsel and that defense counsel's request of the judge that she keep her voice down, while perhaps offensive, did not present an imminent threat to the administration of justice. *Id.* at ¶ 95-98.

14

**{¶23}** *Conliff* and *In re Brannon* are distinguishable from the instant case in that, here, Puleo repeatedly interrupted the proceedings despite warnings from the trial court. *See Warren v. Satterlee*, 11th Dist. Trumbull No. 2005-T-0010, 2006-Ohio-1460, ¶ 20 (O'Toole, J., with two judges concurring in judgment only), citing *Maddox*, 2002-Ohio-7122, at ¶ 5-6 ("Contempt may be derived from the offender's disruptive act of persistently interrupting the court in disregard of the court's warning to stop."); *see also Brannon* at ¶ 101-103 (Fain, J. concurring) (if defense counsel had continued to speak after the trial judge had ordered him to be quiet, it could have formed a basis for contempt). Given the several interruptions and repeated warnings, we cannot say that the trial court abused its discretion in finding Puleo guilty of contempt.

**{¶24}** Accordingly, Puleo's sole assigned error lacks merit. The judgment is affirmed.


MATT LYNCH, J.,

JOHN J. EKLUND, J.,

concur.

15

Case No. 2021-L-131