INMONT CORPORATION, APPELLEE, *v.* INTERNATIONAL PRINTING & GRAPHIC COMMUNICATIONS UNION ET AL; ERFMAN ET AL., APPELLANTS.

(No. C-76639—Decided September 28, 1977.)

*Messrs. Taft, Stettinius & Hollister* and *Mr. J. Mack Swigert,* for appellee.

*Messrs. Doggett & Wais,* for appellants.

*Per Curiam.* This cause came on to be heard upon the appeal; the transcript of the docket, journal entries and original papers from the Court of Common Pleas of Hamilton County; and the transcript of the proceedings, the briefs and the arguments of counsel.

Herman Erfman and Carlos Campbell appealed findings and conclusions holding them separately and individually in contempt of court for violating court orders issued in a strike situation at the initiative of plaintiff Inmont Corporation. Appellants were sentenced to ten days in

the Hamilton County jail and fined $500, these being the maximum penalties under R. C. 2705.05.

While the alleged acts of contempt took place in the course of the same strike, the two appellants did not act in concert, and their cases must be individually and separately reviewed. Each claims two errors: (1) in finding him guilty of contempt, and (2) in the imposition of a grossly excessive sentence. (Erfman's two claims are set forth in the first assignment of error, and Campbell's two claims in the second assignment of error. The third assignment of error is applicable to both contemnors and will be considered first, as a matter of convenience.)

## I.

The third assignment of error alleges that the court erred in refusing to grant a mistrial because of inflammatory statements made in Inmont's closing argument at the contempt hearing. We have not been cited any Ohio case, nor has additional research disclosed any, in which the judgment of a trial court sitting without a jury was reversed on appeal by reason of inflammatory closing arguments, or other similar misconduct which might constitute reversible error if the trial had been to a jury. Judges are presumed to be able to separate the wheat from the chaff in the arguments of counsel. While it is conceivable that a case might arise in which the conduct and statements of counsel in a court trial would constitute reversible error, that would be an extraordinary situation. The cases from other states in which this matter has been discussed follow these principles.[1] We conclude that the claimed inflam-

---

[1] Only Alabama has an apparently hard and fast rule that a reversal for improper argument is limited to jury trials. *Davis* v. *Teague* (1929), 220 Ala. 309, 125 So. 51, appeal dismissed 281 U. S. 695. Other states prefer to handle the question on a case by case basis. The Vermont Supreme Court approaches the problem of counsel's improper argument to the court with the assumption that no prejudice resulted, and then examines the transcript for evidence to the contrary. *Powell* v. *Merrill* (1918), 92 Vt. 124, 103 A. 259. The California, Florida and Illinois courts, without mentioning any presumption that the trial judge will not be influenced by such remarks, also review the record to see if prejudicial error occurred. *Myrick* v. *Bruetsch* (1936), 13

matory remarks in this case[2] do not rise to the level of reversible error.

The third assignment of error is not well taken.

## II.

A consideration of the errors claimed by the appellants requires, first, a determination of whether the findings of

Cal. App. 2d 219, 56 P. 2d 591; *Morton* v. *Gelvan* (Fla. App. 1963), 151 So. 2d 866; *Rutherford* v. *Bentz* (1952), 345 Ill. App. 532, 104 N. E. 2d 343.

[2]The record discloses the following remarks by Inmont's counsel, the motions made by appellant's counsel and the rulings of the court:

"Mr. Swigert: Now, the bottle had smashed and hit the dickey-window, threw glass into the truck driver's eye, and it's very fortunate that he isn't testifying here today blind in one eye. I recall a case that I was involved in a few years ago which was painfully similar in that at the General Electric plant in Blue Ash a strike was on and an object was thrown at a truck driver who was pulling out just as this gentleman was, and this man was blinded in his eye.

"Mr. Doggett: Your Honor, I hate to interrupt, but I object to this inflammatory closing statement, bringing in that Blue Ash strike that had been before in the Common Pleas Court. It's inflammatory, and I move for a mistrial, your Honor. I move for a mistrial.

"The Court: I'll sustain your objection, and deny your request for a mistrial. * * *

"Mr. Swigert: So it seems evident that there is only action that will convince a man like Herman Erfman who incidentally on this witness stand, when asked, well, now, if you were faced with the same situation would you do it again, and he smirked and said, I probably would, that's the kind of man we're dealing with here in this case.

"Mr. Doggett: I move for mistrial on smirk, and him saying the way he characterized the witness, I move for a mistrial. Highly inflammatory.

"The Court: Be Overruled. * * *

"Mr. Swigert: I might say, incidentially, that we've tried to get the guard here and the guard, I'm told, is in Indiana, which is the explanation why we hadn't produced him. We had no idea that kind of excuse was going to be made.

"Mr. Doggett: Your Honor, I don't think that is a proper explanation to be brought on in closing statements, and move for a mistrial.

"The Court: I will sustain your objection and deny the motion for a mistrial. * * *

"Mr. Swigert: Now, here's a man who was spoken to rather sharply at the time he was sentenced. Here's a man who, as Mr. Brooks said, always seemed to be around about the time some trouble occurs on the picket line. Here's a man that it happens from his de-

contempt are supported by credible and probative evidence of those acts which the court considered contemptuous. The provisions of the preliminary injunction pertinent to these determinations read as follows:

"It is further ordered that there shall be no threats or acts of violence or damage to or with respect to any employee or other person doing business with or seeking to do business with the plaintiff or traveling in public streets or highways, or to any property of such employees or other persons, or of the company."

## A. Herman Erfman

The record contains credible evidence of probative value that Erfman verbally threatened the driver of a commercial truck and his passenger as the truck was departing from Inmont's premises, and that he threw at least one glass bottle at the truck, which shattered on the open cozy wing and injured the driver's eye (not permanently).

Erfman's principal claim is that he had neither notice nor knowledge of the preliminary injunction. The claim is not substantiated by the evidence. While there is no direct evidence of his knowledge and notice, the circumstantial evidence is substantial that Erfman was fully aware of the injunction. Erfman had participated in the strike as a picket and had in fact served as a "picket captain" on four separate occasions, all during the period of one month and twelve days prior to the bottle-throwing incident. On

---

meanor, sort of considers himself as a, as the enforcer, or something, in this strike.

"Mr. Doggett: Move for a mistrial, your Honor.

"The Court: Be overruled. * * *

"Mr. Swigert: In any event, I submit that Carlos Campbell and Mr. Erfman have both violated the order of this Court, and that in addition Carlos Campbell has violated the condition of his leniency, and both of them should be found in contempt, and Carlos Campbell's conditions should be withdrawn and he should be sent to the Workhouse.

"Mr. Doggett: For the record, I move for a mistrial on the basis of the inflammatory statement of company's counsel in closing statement.

"The Court: Be overruled."

cross-examination, he admitted an awareness of the court order and stated that he would probably "do it again" (referring to his throwing the bottle).

We conclude that the penalties imposed ($500 fine, costs, and 10 days confinement) were not excessive, considering the flagrancy of the violation and the aggravated nature of Erfman's conduct. We note that Erfman was confined for three days before his release by this court and that the remainder of seven days has yet to be served.

The first assignment of error is not well taken and the judgment with respect to Herman Erfman is affirmed.

## B. Carlos Campbell

The findings against Campbell are complicated by the fact that he had been found in contempt of court for actions taken prior to the three incidents underlying this appeal. On that earlier occasion, Campbell had, while on picket duty, blocked the entrance to Inmont's premises for a substantial period of time, tying up traffic on the street. He had been fined $10 and costs, which was paid; and he had been sentenced to "ten days penal servitude," but the execution thereof was "stayed until further order of this court, conditional upon the said Carlos Campbell not participating in any strike or picketing activity at any location for the duration of the current strike against the plaintiff company."

In the instant contempt proceedings, the court found that Campbell's conduct in each of three separate incidents was in violation of the condition of the stay of confinement and, further, that the third incident was a fresh violation of the preliminary injunction. Specifically, the court found as follows:

(1) That on July 27, 1976, Campbell visited and loitered intermittently at the union's strike headquarters located some fifty yards north of the Inmont plant and that this constituted participation in strike and picketing activities;

(2) that on July 28, 1976, Campbell joined the picket line in front of Inmont's plant for a period of approximately 20 minutes, refusing to leave when warned by In-

mont's employees, and that his conduct constituted willful participation in strike and picketing activities; and

(3) that on August 11, 1976, Campbell followed a truck as it left Inmont's premises, passed a police cruiser which was moving up to escort the truck, and placed his car between the truck and the cruiser, intending to follow the truck to its destination, and that this constituted both a threat of violence or damage in violation of the preliminary injunction and a violation of the stay order.

We conclude that three of the four findings of violation are not supported by the evidence, and that the only violation so supported was in the third incident. More specifically, our conclusion is that in undertaking to follow the truck, Campbell participated in strike activity in violation of the conditions of his stay order, but that this conduct did not constitute a fresh violation of the preliminary injunction against threats of violence or damage against persons or property.[8]

---

[8]As to incident (1), the evidence was that Campbell was seen time and again in the vicinity of the card table set up outside the building on the lot adjoining Inmont's premises, about 50 yards distant from Inmont's offices, but the evidence utterly fails to establish that he engaged actively in strike activities. To the contrary, Campbell's corroborated testimony is that he had to report in person in order to register for and to get strike benefits and to arrange for his "vacation" with union officials. In addition, the union made available at that location all information relevant to its activities, having no permanent office elsewhere. The evidence does not, as a matter of law, establish participation in strike or picketing activities.

As to incident (2), the evidence was that between 4 p. m. and 4:30 p. m. on July 28, 1976, Campbell was on the sidewalk at one edge of an entrance to Inmont's plant for a period of about 20 minutes and that he did not leave when ordered to do so by the company security officer. However, the evidence fails to establish that he affirmatively engaged in picketing activities. Campbell's corroborated testimony is that he approached the company's premises to withdraw money from his account with the credit union, administered by a non-striking lab technician in the plant, that this administrator insisted on delivering the check personally to Campbell, that as Campbell approached the entrance there was a contact between a picketer and a departing vehicle (who ran or walked into whom is unclear), that the picketer was on the ground needing assistance, that Campbell had witnessed the incident

The court imposed penalties of a $500 fine and costs and 10 days confinement for the "fresh" violation of the preliminary injunction in the third incident and ordered the suspended 10-day sentence to be served for the three violations of the stay order, concurrently. The record discloses that Campbell was confined for 3 days prior to being released by this court on appeal.

The penalties imposed for the "fresh" violation of the preliminary injunction must fall with our conclusion that the underlying finding of contempt was not proved. The remaining punishment is the sentence of 10 days for the violation of the stay order. In our judgment, that punishment is now excessively severe, and the imposition of 10 days confinement was an abuse of discretion.

---

and waited for the police to arrive, that one guard told Campbell not to come onto the company's premises while the security chief called out a contrary order, that Campbell remained on the public sidewalk, his back to the plant without engaging in any other activity, and that when he received his check from the administrator, he left the vicinity. This evidence, as a matter of law, fails to prove a violation of the stay order.

In incident (3), the evidence discloses that Campbell positioned his car in the driveway entrance of the lot adjoining Inmont's plant, right at the curb, facing out. He was ready to depart on a moment's notice, and he watched the company's entrance for a substantial period of time. As the truck left the Inmont driveway, Campbell pulled out into the street in the same direction immediately behind the truck. In doing this, he passed a police cruiser that had been stopped in the curb lane but then moved out to escort the truck. The sequence of vehicles was the truck, Campbell and then the police cruiser. However, Campbell's uncontroverted testimony is that having been persuaded by two strikers in his car to follow the truck to determine its destination, he changed his mind when he observed the police cruiser following him and turned left into a parking lot within a few hundred feet and before reaching the next intersection. The evidence does not establish any communication, verbal or non-verbal, between the occupants of Campbell's car and either the truck or the police cruiser, other than whatever may be communicated by following the truck for a few hundred feet. Under these circumstances, the evidence fails to establish any threat or act of violence or damage in violation of the preliminary injunction, as a matter of law, but it furnishes sufficient proof of participation in strike activities to sustain the court's finding that Campbell violated the stay order.

Contempt proceedings, including the question of reasonable discretion in imposing punishment, may be reviewed by the Ohio appellate courts. *Myers* v. *State* (1889), 46 Ohio St. 473; *Weiland* v. *Indus. Comm.* (1956), 166 Ohio St. 62. While the Ohio Supreme Court reversed and remanded those two cases for further proceedings, the United States Supreme Court and the Sixth Circuit Court of Appeals have modified and reversed excessive punishment, without remanding to the trial court. *United States* v. *United Mine Workers of America* (1947), 330 U. S. 258, at 302 *et seq.*; *Yates* v. *United States* (1958), 356 U. S. 363; *Cheff* v. *Schnackenberg* (1966), 384 U. S. 373; *United States* v. *Maragas* (C. A. 6, 1968), 390 F. 2d 88. We conclude that it is appropriate, in the exercsie of our powers to review and to modify under App. R. 12(B), to reduce Campbell's punishment to confinement of three days, with credit for the three days already served.

The second assignment of error is well taken in part and overruled in part.

### III.

Accordingly, we affirm the judgment of the trial court with respect to Herman Erfman. With respect to Carlos Campbell, we affirm the judgment in so far as it finds one instance of contempt of the stay order, but we reverse the judgment in all other respects; further, we modify the order of confinement reducing it from 10 days to 3 days, with credit for the time served, and we order him released from further confinement.

*Judgment affirmed in part and reversed in part.*

KEEFE, P. J., BETTMAN and BLACK, JJ., concur.