**CITY OF CLEVELAND, Appellee,**

v.

**HEBEN, Appellant.**

[Cite as *Cleveland v. Heben* (1991), 74 Ohio App.3d 568.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 58229.

Decided June 17, 1991.

*Mark A. McClain,* Chief Prosecutor, for appellee.

*Edward J. Heben Jr., pro se,* and *Steven J. Paffilas,* for appellant.

JAMES D. SWEENEY, Judge.

Defendant-appellant, Edward J. Heben, Jr. ("Heben"), appeals the determination of the trial court which found him in contempt of court. For the reasons adduced below, we affirm in part and reverse in part.

A review of the short record before this court, which does not include the affidavits attached to appellant's brief which were not filed in the present case, reveals that Heben was the attorney of record representing almost one hundred persons who had been arrested for their actions surrounding a pro-life/anti-abortion demonstration in Cleveland, Ohio, on May 20, 1989. Their cases had been pending before the court since their arraignment on May 22, 1989, and were being tried in groups of approximately five to six defendants at a time by judges of the trial court.

On June 5, 1989, at a mass pretrial hearing before Judge Shirley S. Saffold regarding eighty-eight of the defendants, the court set a trial date for Monday, July 10, 1989, for one group of demonstrators.

On Friday, July 7, 1989, Judge Saffold received a letter from Mr. Lavrishna, Heben's co-counsel on an earlier trial of a group of demonstrators. This letter indicated that Heben would be filing an affidavit of judicial disqualification on or before the trial date. This affidavit was never filed.

On the morning of July 10, 1989, with forty jurors ready to be seated, Heben requested that the court continue the trial due to counsel's sudden illness. The court ordered Heben to go to Kaiser Permanente Medical Center, which was counsel's health care provider, to be examined by medical personnel to determine the nature and extent of counsel's illness. If Heben was unable to be examined by 1:30 p.m. that day, the court ordered Heben to have Kaiser personnel telephone the court at that moment and the court would ask that Heben be seen as a courtesy to the court. If Heben was examined, the court ordered him to return to the court with a note from a doctor showing a professional diagnosis.

Heben went to Kaiser but was not examined by a doctor, did not have a doctor call from Kaiser, and did not bring a note back to the court.

At 1:30 p.m., a hearing was held in the chambers of Judge Charles W. Fleming, who was the presiding and administrative judge at the court. Present were: Judge Fleming, Judge Saffold, Heben, and counsel for the city of Cleveland. Heben claimed that he was not prepared to go to trial because he had the flu for the past week; his right ear was completely plugged up; his left ear was fifty percent plugged up; he had cold chills; and he had been sick in bed the entire past week. Heben also admitted that he had been out of town the entire week before the trial. Judge Fleming noted that Heben could hear him, and ordered Heben to proceed with the trials on that date. Heben refused to try the cases, claiming he was sick. Heben claimed that Kaiser personnel told him he should be using antibiotics and should return to Kaiser at 6:00 p.m. that afternoon. Heben threatened the court that if a jury were brought up, he would tell that jury he was sick and unable to go forward.

The parties then returned to Judge Saffold's courtroom. Heben continued to profess his having an illness. Judge Saffold then told Heben that he was either to be examined that afternoon by a court-appointed physician at court expense, or he could obtain a doctor of his choosing. Further, the court said if the doctor sends a medical note, a continuance would be granted. After a short recess, Heben informed the court that Dr. Zannoni, in the office of Dr. George Smirnoff, would see Heben if he arrived within twenty minutes. The court then reminded Heben that a letter from the doctor was required.

Later that same afternoon, Dr. Zannoni appeared before the court pursuant to a subpoena. Dr. Zannoni testified that she had never seen Heben before. She stated that Heben complained of earache, difficulty in hearing, sore throat, skin rash, diarrhea and of being generally weak and tired for ten days.

The doctor obtained blood samples and a throat culture. She also tested for mononucleosis and electrolyte balance. The results for these tests and cultures would not be available for up to ten days. No hearing test was done.

The doctor stated that based on outward visual physical examination, Heben had a throat and ear infection, and a cold sore in his mouth. In short, it was her opinion that Heben was sick, and that she would advise him not to work for two weeks.

The court, after hearing the testimony of the doctor, continued the trials until 1:30 p.m. the following day.

On July 11, 1989, the court met as ordered. At that time, Judge Saffold stated that she found that Heben's allegations of illness were insincere, thereby effectively disregarding Dr. Zannoni's diagnosis. The court also said that a body temperature of 99.5°F is about normal considering that the outside air temperature was 100°F on July 10, 1989. While addressing the court in response to a city motion, Heben disregarded the court's order to stand. He claimed he was taking five prescribed medications and suffered from drowsiness. Documentation of such medication is not in the record. The court ordered him to respond to the motion. Heben said that he wanted to respond by talking about his illness on the record. The court ordered that such a response not be recorded and granted the city's motion to have the cases adjudicated. Again, Heben refused to go forward.

Thereafter, counsel and Judge Saffold met with Judge Fleming in Judge Fleming's chambers. There, Heben told Judge Fleming that his only reason for not proceeding with trial was due to illness. Heben claimed he had been examined by an audiologist that morning and the test showed that he had a fifty percent hearing loss in both ears. Documentation of this doctor's visit and test results are not in the record. Heben said that he was ill all last week and was in Loudonville, Ohio, during that period. He did not make any effort to obtain counsel to assist him. Judge Fleming ordered Heben to proceed with trial, finding the claim of illness to be nonbelievable. Heben refused to proceed with the trial. The court ordered Heben not to advise the jury concerning his alleged illness and the substance of the in-chambers proceeding.

Failing to convince the court of his illness, dilatory tactics continued when Heben stated that a jury could not be impanelled because there were still up to twenty motions to be heard by the court. The city responded by reminding the court that all the motions had been ruled upon except for a single motion *in limine.* The court ordered that the jury be brought up. Heben then asked if his clients could address the court on the record. The court denied this request and ordered Heben not to advise his clients to address the court.

Judge Fleming then asked Heben how many criminal cases he had tried in his fourteen and one-half years of practice. Heben could not remember, finally stating, "I don't do criminal cases."

Heben then made a verbal attack on the work product and service of the court reporter's office. Heben then reiterated that he would not go forward because he was allegedly too ill. The court instructed him to go forward and again ordered him not to tell the jurors anything about the alleged illness or being compelled to go to trial.

Heben then advised the court that, before the jury is impanelled and seated, his clients wanted to address the court and discharge Heben as their attorney. The court refused this request.

The parties then resumed the proceedings in the courtroom of Judge Saffold. As the court was hearing Heben's recently filed motion to suppress, Heben, rather than proceed on the merits of his motion, stated that he was too ill to proceed on the case. At that instant, without permission, Heben stated that he was going to go to the bathroom. As he was exiting the courtroom, the court ordered Heben to return. Heben again stated as he exited the room that he was sick and going to the bathroom. At this point, the following colloquy occurred:

"THE COURT: Bring him back. Mr. Heben, may I just remind you to act professionally.

"MR. HEBEN: *Your Honor, I would like to remind you to act professionally.* I am sick. You had a doctor come in here that you had subpoenaed in here that said I was sick and could not try the case for two weeks.

"THE COURT: Sit down and be quiet.

"MR. HEBEN: I am going to the bathroom. I am ill.

"THE COURT: You are going to sit here, Mr. Heben, until this court dismisses you. You have no right to come into this courtroom and conduct yourself in the way and in the manner you have been.

"MR. HEBEN: Your Honor, you have no right to do what you are doing. *I have no respect for this Court.*

"THE COURT: You are in contempt of court, sir. The fine is $250 and 30 days in jail. Take him away." (Emphasis added.)

The court then addressed the reasons for the holding of contempt:

"THE COURT: The Court finds that Mr. Heben intentionally and willingly obstructed the flow of justice in this courtroom. The Court believes that his actions as well as his disrespect of this court on numerous occasions, as well as today, were so founded in his attempt to delay the course of these proceedings and to impede the flow of justice.

"*Let the record indicate that the Court has held Mr. Heben in contempt of court because he made a derogatory statement, hopped up from his seat,*

*went out in the hallway and the Court directed the bailiffs to bring him back.*

"Upon the bailiffs bringing him back to the courtroom, I believe that the transcript will indicate the transaction that took place." (Emphasis added.)

The court then addressed the group of defendants scheduled for trial and told them the trial would be continued for one week so as to obtain new counsel. If indigent, counsel would be appointed.

This appeal, raising two assignments of error, followed:

"I

"The trial court erred in finding appellant guilty of contempt in the case *City of Cleveland v. Edward Hackett, et al.*, case No. 89–CRB–10563A, B, C, etc., Cleveland Municipal Court, considering the totality of circumstances occurring during the pendency of that proceeding."

The present facts indicate the action and remarks of Heben to the court were acts of direct contempt, since they were done in the presence of the court so as to obstruct the administration of justice. R.C. 2705.01.

The sanction in this case was meant to punish Heben rather than coerce him to comply with the court's orders. The present sanction therefore relates to an act of direct criminal contempt. See *State v. Kilbane* (1980), 61 Ohio St.2d 201, 204–205, 15 O.O.3d 221, 222–224, 400 N.E.2d 386, 389–390. Accord *In re Williams* (Aug. 23, 1990), Cuyahoga App. No. 56908, unreported, at 6–7, 1990 WL 121498.

The determination of contempt is left to the sound discretion of the trial judge. However, the accused's guilt must be affirmatively shown in the record and the offending conduct must constitute an imminent threat to the administration of justice. *State v. Conliff* (1978), 61 Ohio App.2d 185, 15 O.O.3d 309, 401 N.E.2d 469; *State v. Treon* (App.1963), 91 Ohio Law Abs. 229, 241, 188 N.E.2d 308, 316; *State v. Saltzman* (Oct. 9, 1980), Cuyahoga App. Nos. 41863 and 41864, unreported. "[T]he administration of justice is best served by restricting the power of summary direct contempt to that conduct which tends to impede, embarrass or obstruct the court in the performance of its function." *State v. Conliff, supra,* 61 Ohio App.2d at 190–191, 15 O.O.3d at 312, 401 N.E.2d at 474.

In the case *sub judice*, the transcript affirmatively indicates that conduct for which Heben was censured, to wit, the derogatory statements made to the court after it had Heben brought back into the courtroom.

Heben was not censured for his refusal to go forward due to alleged illness and resulting fear of ineffectively assisting his clients. See *In re Sherlock* (1987), 37 Ohio App.3d 204, 525 N.E.2d 512. This conduct undoubtedly tended to embarrass the court's performance of its functions in the administration of justice.

Accordingly, the court acted within its discretion in censuring Heben. Assignment overruled.

"II

"The trial court erred by abusing its discretion in sentencing appellant to a $250.00 fine and 30 days in jail for appellant's conduct in the case *City of Cleveland v. Edward Hackett, et al.,* case No. 89–CRB–10563A, B, C, etc., Cleveland Municipal Court."

In this assignment of error, Heben apparently argues that the penalty of both a fine and imprisonment was not reasonably commensurate with the offending conduct. See *State v. Kilbane, supra.* Heben argues, by way of citation to an unreported appellate case, that imprisonment and a fine under the present facts is an abuse of discretion. See *State v. Wilson* (May 3, 1970), Cuyahoga App. No. 30385, unreported (a portion of which is attached to appellant's brief, Exhibit P). He does not elaborate his position with articulable facts and legal reasoning in his brief.

Viewing the facts before us, we cannot say that the court's penalty of $250 was unreasonable under the circumstances. However, pursuant to our authority to review and modify under App.R. 12(B), we find that a further imposition of thirty days' imprisonment was excessive and unreasonable in light of (1) the extent and nature of the two disparaging remarks directed to the court, and (2) the fact of Heben's removal as attorney of record for approximately eighty-eight defendant/demonstrators and the resulting financial loss therein. See, also, *Inmont Corp. v. Internatl. Printing Union* (1977), 54 Ohio App.2d 17, 8 O.O.3d 31, 374 N.E.2d 176, at paragraph one of the syllabus. Accordingly, the imposition of the fine is upheld and the imposition of imprisonment is reversed.

*Judgment affirmed in part*
*and reversed in part.*

NAHRA, J., concurs.

KRUPANSKY, C.J., dissents.

KRUPANSKY, Chief Justice, dissenting.

I respectfully dissent from the majority opinion since while I agree defendant's conduct may have been ill-mannered, his conduct posed no "actual or imminent" threat to the administration of justice.

A direct contempt of court, with which defendant was charged and summarily punished, is statutorily defined as follows:

"R.C. 2705.01  Summary punishment for contempt.

"A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."

"By both statutes and judicial decision a court is empowered to summarily punish contempt personally observed by the court." *In re McGinty* (1986), 30 Ohio App.3d 219, 225, 30 OBR 377, 382, 507 N.E.2d 441, 447. In *State v. Conliff* (1978), 61 Ohio App.2d 185, 15 O.O.3d 309, 401 N.E.2d 469, the court clearly warned against a court's unrestrained findings of contempt against a party unless the conduct of the party poses an actual or *imminent* threat to the administration of justice. *Id.; In re Little* (1972), 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.2d 708; *State v. Conliff, supra; State v. Milano* (Aug. 4, 1983), Cuyahoga App. No. 44610, 1983 WL 5628, unreported.

In a criminal contempt case proof beyond a reasonable doubt is required. *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 18 O.O.3d 446, 416 N.E.2d 610; *In re McGinty, supra; Bd. of Edn. v. Hamilton Classroom Teachers Assn.* (1982), 5 Ohio App.3d 51, 5 OBR 146, 449 N.E.2d 26.

A review of the record indicates the facts do not fit within the purview of R.C. 2705.01. The trial court found defendant in contempt for stating as follows: (1) "Your honor, I would like to remind you to act professionally. I am sick. * * *"; and (2) "Your honor, you have no right to do what you are doing. I have no respect for this Court."

These two comments of defendant were prompted by the court's order to defendant to sit down and be quiet after he stated he was going to the bathroom since he was ill. These acts were *only* at best a display of ill manners, but can under no circumstances be found to constitute a threat to the administration of justice. *State v. Conliff, supra.*

In the case *sub judice,* had defendant refused to proceed to trial and the medical evidence failed to substantiate any medical illness, then a different scenario would have been presented to obstruct the administration of justice and a contempt action may have been in order. However, under the present circumstances it is difficult to understand why the trial court would have accepted a doctor's certificate of illness and yet would not accept the doctor's

testimony, under oath, after the trial court sent the bailiff to bring the doctor from her office to testify in the case *sub judice.* The doctor, who had never met or treated defendant previously, verified defendant's infirmities under oath. We must assume her clinical findings were based upon her medical training and her testimony was impartial.

While we are sympathetic to the fact judges are exposed to the pressures of moving a docket and are often exposed to cutting, insolent, insulting remarks, the court stated in *Little, supra,* 404 U.S. at 555, 92 S.Ct. at 660, 30 L.Ed.2d at 711:

" 'The vehemence of the language used is not alone the measure of the power to punish for contempt. The fires which it kindles must constitute an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil. * * * [T]he law of contempt is not made for the protection of judges who may be sensitive to the winds of public opinion. Judges are supposed to be men [or women] of fortitude, able to thrive in a hardy climate.' *Craig v. Harney,* 331 U.S. 367, 376 [67 S.Ct. 1249, 1255, 91 L.Ed. 1546, 1552] (1947). 'Trial courts * * * must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice.' *Brown v. United States,* 356 U.S. 148, 153 [78 S.Ct. 622, 626, 2 L.Ed.2d 589, 595] (1958)."

This court has affirmed the finding of direct contempt in cases where the facts warrant such a finding and obstruction to the administration of justice is undeniable. In *State ex rel. Seventh Urban, Inc. v. McFaul* (1983), 5 Ohio St.3d 120, 5 OBR 255, 449 N.E.2d 445, this court held that an assault outside the appellate courtroom by one attorney on another before the judges entered the courtroom which delayed hearing for up to ten minutes constituted an obstruction of justice.

Likewise, in *In re McGinty, supra,* there were deliberate acts of counsel, *viz.,* (1) directly disregarding the trial court's order to interview witnesses after defense counsel interviewed them, (2) intimidating defense counsel and his witness, (3) interfering with defendant's right to subpoena witnesses, and (4) creating hostility in the witness against defense counsel. These acts were held an imminent threat to the administration of justice.

Certainly defendant, in the case *sub judice,* angered at the trial court's lack of empathy to his physical illness, whether feigned or real, may have been rude to the court. Defendant's conduct as the majority suggests may even have tended to "embarrass" the court. The court may well have taken exception to defendant's remarks, tone of voice or gestures which only the court could discern. However, pursuant to the plain language of R.C. 2705.01 and its statutory elements, defendant's allegedly contemptuous words under

no stretch of the imagination served to "obstruct the administration of justice" in the proceedings before the trial court. R.C. 2705.01; *State v. Milano, supra.* Furthermore, the record does not indicate defendant's guilt was proved "beyond a reasonable doubt." *Cleveland v. Ramsey* (1988), 56 Ohio App.3d 108, 564 N.E.2d 1089.

The courts of justice must never be so harsh or unyielding as to require a sick attorney to perform in the courtroom when he cannot adequately or zealously protect his client's interests to the best of his ability. Surely, the client must not be made to suffer no matter how unsympathetic his/her/its cause may be.

Accordingly, I would reverse the trial court's judgment in its entirety.