JOURNAL ENTRY and OPINION
{¶ 1} During the course of defendant Earl King's criminal trial, the court held him in contempt five different times. The court sentenced King for the contempt as follows: sixty days for the first contempt; thirty days for the second contempt; sixty days for the third contempt; sixth months for the fourth contempt; and sixty days for the fifth contempt, after which the court removed King from the courtroom. When sentencing King, the court ordered that King serve a total of one year and one hundred twenty days consecutive to the prison term imposed for the underlying felonious assault charge. In this appeal, King argues that the court erred because it imposed jail time for the contempt in excess of that allowed by law.
 {¶ 2} Because King does not challenge the validity of the contempt findings, it would serve no purpose to give a detailed statement of facts going to the charges. It will suffice to say that King made frequent and repeated outbursts that interrupted the testimony of witnesses and the prosecuting attorney's closing argument, and that the contempt citations came about only after the court had repeatedly admonished King about his behavior.
 I {¶ 3} The court punished King for engaging in direct, criminal contempt. Criminal contempts are "punitive in nature and are designed to vindicate the authority of the court." State ex rel. Corn v. Russo
(2001), 90 Ohio St.3d 551, 554. The criminal contempt was direct because it occurred "in the presence of or so near the court or judge as to obstruct the administration of justice." R.C. 2705.01. Direct contempt may be punished summarily. Id.; State v. Belcastro (2000),139 Ohio App.3d 498, 501. Conduct will only be considered a direct contempt if it constitutes "an imminent threat to the administration of justice." City of Cleveland v. Heben (1991), 74 Ohio App.3d 568, 573.
 {¶ 4} King argues that the court's punishment for contempt exceeded the statutory limits on sentencing contained in R.C. 2705.05(A). That section states:
 {¶ 5} "(A) In all contempt proceedings, the court shall conduct a hearing. At the hearing, the court shall investigate the charge and hear any answer or testimony that the accused makes or offers and shall determine whether the accused is guilty of the contempt charge. If the accused is found guilty, the court may impose any of the following penalties:
 {¶ 6} "(1) For a first offense, a fine of not more than two hundred fifty dollars, a definite term of imprisonment of not more than thirty days in jail, or both;
 {¶ 7} "(2) For a second offense, a fine of not more than five hundred dollars, a definite term of imprisonment of not more than sixty days in jail, or both;
 {¶ 8} "(3) For a third or subsequent offense, a fine of not more than one thousand dollars, a definite term of imprisonment of not more than ninety days in jail, or both."
 {¶ 9} In State v. Kilbane (1980), 61 Ohio St.3d 201, 204, the Supreme Court held that "[s]ince a direct contempt was involved, the limits placed on contempt sanctions by R.C. Chapter 2705 are inapplicable." This statement finds its source in Hale v. State (1896),55 Ohio St. 210, 215, where the Supreme Court stated that "[t]he [contempt] power inheres in courts independently of legislative authority. A power which the legislature does not give, it cannot take away." The extent to which R.C. Chapter 2705 is applicable is merely to provide procedural safeguards — it does not and cannot purport to limit the court's inherent authority to punish contemptuous conduct. SeeCincinnati v. Cincinnati District Council 51 (1973), 35 Ohio St.2d 197,207.
 {¶ 10} Although R.C. 2705.05(A) does not apply to limit the punishment a court may impose for contemptuous conduct, this is not to say that the court has no limits on its authority to punish contemptuous conduct. The court's inherent power to punish contempt necessarily implies that it cannot do so arbitrarily or unreasonably, but in proportion to the contemptuous conduct. Carter v. Carter (Nov. 23, 1994), Montgomery App. Nos. 14409, 14530 and 14575.
 {¶ 11} While we agree that King showed contempt for the court (a fact that even he does not contest on appeal), we find the punishment meted out to King was an abuse of discretion because the court's cumulative sentence of sixteen months went well beyond what was reasonable for the circumstances. For example, the court sentenced King to sixty days in jail for the first act of contempt. Sixty days in jail is not trivial. It is the sentence given as punishment for the commission of third degree misdemeanors. This much time is significantly more than an offender would receive for disorderly conduct (a minor misdemeanor) and unwarranted since King did nothing more than ask if he could speak while the court tried to admonish him not to blurt out comments in front of the jury. Likewise, the punishment for the fifth contempt citation, six months in jail, was far too severe. A six-month sentence is equivalent to that given for first degree misdemeanors.
 {¶ 12} Although the court is not bound by the sentencing scheme in R.C. 2705.05(A), that code section sets limits on punishments that the General Assembly has deemed to be reasonable. We recognize that every case of contempt turns on its own facts, but the limits on punishment set forth in R.C. 2705.05(A) should be used as a guide to prevent arbitrary and capricious contempt sentences. When that code section is applied to the very lengthy prison terms meted out here, we have no difficulty in concluding that those prison terms were so long as to constitute an abuse of discretion.
 {¶ 13} We wish to state that the court displayed a great deal of patience in dealing with King. But there is a point of diminishing returns when meting out punishment for the kind of behavior King displayed. Piling on punishment for acts that a person benightedly believes are simple exercises of constitutional rights serves no punitive purpose. It was apparent that King would not comply with the court's admonitions because he believed that he was being "railroaded." Of course nothing of the kind was happening, but King's firm belief in the justice of his cause made any punishment unlikely to deter him; in fact, it made him all the more resolute in his actions.
 {¶ 14} We recognize that it might appear easy for us to be critical of the court's actions, separated as we are from the courtroom. We are bound by the record that it presented to us, and it is the court's obligation to ensure that the record supports the punishment. Nothing we say here is intended as a criticism of the court, which displayed appropriate restraint and patience in dealing with King. Nevertheless, once it became obvious that King would not comply — and it did become obvious — the better course, and one that the court eventually took, was to have him removed from the courtroom. The United States Supreme Court has held that "[a] defendant may lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Illinois v. Allen
(1970), 397 U.S. 337, 343. When the court has to find a person in contempt of court five times in the span of eight hours, it should be obvious that contempt findings are failing to serve their intended purpose and then become unreasonable.
 {¶ 15} The power to send someone to jail for contempt is given on the assumption that it will be used sparingly. Gompers v. Bucks Stove Range Co. (1911), 221 U.S. 418, 450. We are not in a position to say in the abstract how many contempt citations are too many, but had this trial gone on much longer, King would be serving more time for contempt than for committing the felonious assault. We believe the fourth and fifth contempt citations were unreasonable and therefore an abuse of discretion.
 {¶ 16} It is not our place to say what sentences the court should have imposed for the first three acts of contempt. We do suggest that the court reference R.C. 2705.05(A) on remand, but that matter is left to the court's sound discretion.
 II {¶ 17} We do not find the court's decision to make the contempt sentences consecutive to be an abuse of discretion. The power to hold a party in direct contempt is intended to vindicate the authority of the court. Denovchek v. Trumbull Cty. Bd. of Commrs. (1988), 36 Ohio St.3d 14,15. That power, and the punitive aspect that is necessarily implied in wielding that power, would be ineffective if the court were required to impose a jail term concurrent with a prison sentence for the underlying felony. Serving punishment for contempt concurrently with another prison sentence would carry no practical consequences for the contemptuous conduct.
 III {¶ 18} Finally, we note that the court's sentencing entry contains an error. It erroneously states that King had been held in contempt "6 times." In fact, there were only five contempt citations, not six. Given our finding that the fourth and fifth contempt citations were an abuse of discretion, we order that those citations be vacated. This effectively moots King's final argument.
 {¶ 19} The assigned error is sustained and that part of the court's sentencing entry is remanded for resentencing.
This cause is reversed and remanded for proceedings consistent with this opinion.
It is, therefore, ordered that said appellant recover of said appellee his costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J., and COLLEEN CONWAY COONEY, J., CONCUR.