OPINION
{¶ 1} Defendant-appellant Attorney Richard A. Olivito appeals the decision of the Youngstown Municipal Court which found him guilty of contempt and ordered him to serve thirty days in jail and submit to a mental health evaluation. Appellant complains that he was not notified of his client's trial date in the case underlying his contempt conviction, the contempt finding was not supported by proof beyond a reasonable doubt, and his sentence was arbitrary and improper. For the following reasons, the judgment of the trial court for contempt is affirmed, the sentence of mental health evaluation is reversed, and the sentence of thirty days in jail is reversed and remanded for imposition of a new sentence.
 STATEMENT OF THE CASE {¶ 2} On May 28, 2003, Charlene Maple, who was charged with driving under suspension, first appeared in the Youngstown Municipal Court. Appellant Olivito was appointed as counsel for Ms. Maple. On July 11, 2003, appellant appeared with Ms. Maple for pretrial. At the pretrial, Ms. Maple signed a form and checked the blank waiving her right to a speedy trial and requesting an indefinite continuance. A judgment entry was entered on July 11, 2003, which stated that the case was reset at the prosecutor's and defendant's request until September 23, 2003 at 10:15 a.m. The entry also stated that Ms. Maple should report to probation to determine her eligibility for a pretrial diversion program called SLIP. This entry was signed by appellant as counsel for Ms. Maple.
 {¶ 3} On September 23, 2003, the case was called for trial. Neither Ms. Maple nor appellant appeared. The court's secretary called appellant, who stated that he was at an important case in Warren and could not attend the trial at that time but may be able to make it around 1:00 p.m. The court again called the case at 11:00 a.m. The court noted on the record that neither appellant nor his client were present. The court then issued a capias for the arrest of each for failure to appear. Appellant was informed about his capias at 11:15 a.m., and did not appear until three days later, on September 26, 2003.
 {¶ 4} At that appearance, appellant apologized and explained that his case in Warren went later than he expected and he was also involved in attempting to obtain a stay for an eighty-five year old man with a pacemaker. He noted that he had to miss a court date in Campbell too, but he remembered to call that court to cancel. He admitted that he "oversighted" calling the Youngstown Municipal Court. He noted that he could not find his client and that he recently discovered that she failed to pay the fee for the pretrial diversion program. The court set the case for a contempt hearing in a September 26, 2003 entry.
 {¶ 5} The contempt hearing proceeded on October 3, 2003. The court's secretary testified that she called appellant when he failed to appear and he advised that he was involved in another matter that took precedence over this and that he could come later. In attempting to show cause why he should not be held in contempt, appellant stated that he was involved in a very important case helping a client, who had been beaten by police officers, testify in front a grand jury in return for decreased charges. He also said he was attempting to stay the sentence of another client, who had also been beaten and who was fearful that the jail security features would cause his pacemaker to malfunction.
 {¶ 6} Appellant claimed that the assistant prosecutor in Youngstown informed him that he would try to find someone to stand in for him. Appellant again noted that he properly called the Campbell Municipal Court to inform them that he could not make a scheduled hearing, but "oversighted" the Youngstown Municipal Court. Appellant stated that when he was informed about the capias, he was "caught up" in Warren for the next few days.
 {¶ 7} Appellant's attitude then apparently got accusatory as he demanded to know how many times this has happened in the judge's court and stated that he was going to file a public records request to determine how many times this has happened. He also stated, "This court is really acting strange, I'll tell you that." When the court advised that it was not on trial, appellant responded, "I think it is." (10/03/03 Tr. 8).
 {¶ 8} When the court inquired if appellant would be calling any witnesses to show why he should not be held in contempt, appellant stated that he did not know he could and asked for a continuance to do so. The court denied the request, reminded appellant that he was an attorney, and stated, "You know how contempt hearings work." Appellant responded, "I do not know." (10/03/03 Tr. 9).
 {¶ 9} In an October 3, 2003 judgment entry, the court found appellant guilty of contempt for failing to appear for the September 23, 2003 trial. Sentencing was set and a presentence investigation was ordered. Appointed counsel then attended a "pretrial" on appellant's behalf. A sentencing hearing proceeded on February 13, 2004.
 {¶ 10} At the sentencing hearing, the court noted that as per the results of the pretrial, appellant was to arrange for a mental health evaluation. Appellant voiced that the court did not actually order such evaluation, that he was not in favor of this agreement his counsel made in chambers, and that he was dismissing his counsel. He argued that his omissions did not warrant contempt or a mental health evaluation. Appellant then presented argument in mitigation of sentencing. He stated that it was imperative for him to help a fifty-some-year-old man with a pacemaker avoid jail; note, he had previously stated that this man was eighty-five. He then noted that he submitted letters from this and other satisfied clients. He explained that he is serious about stopping police brutality and got "caught up" in his representation of his clients. He then apologized for his oversight.
 {¶ 11} In a February 13, 2004 judgment entry, the court sentenced appellant to thirty days in jail. The court suspended the sentence until March 8, 2004 and ordered appellant to attend a mental health evaluation.
 {¶ 12} When the case was called on March 8, 2004, appellant informed the court that he still did not attend an evaluation because he never agreed to it. Appellant also made arguments in support of a motion to reconsider filed that same day. He raised for the first time an argument that although an entry in the Maple case stated that September 23, 2003 would be the next court date, he believed that this would be canceled due to the pretrial diversion program. He noted that neither the prosecutor nor probation advised him that his client never completed the program. Appellant concluded that there was no evidence that he intentionally defied a court order.
 {¶ 13} The court denied his motion to reconsider. The court then imposed the thirty day sentence and ordered that he complete the mental health evaluation. Appellant was immediately taken to jail.
 APPELLATE BRIEFING {¶ 14} This court stayed appellant's sentence the day he was taken to jail. We allowed submission of Ms. Maple's municipal court file for consideration in this appeal since it is the underlying case containing pertinent occurrences. Appellant and his counsel were given various extensions to file a brief, which was finally filed pro se on September 21, 2004. That brief failed to comply with the Appellate Rules; most specifically, the brief was sixty-three pages long. Appellant never asked for leave to exceed the page limit, and this court would not have granted such leave in a simple contempt case. Thus, we ordered the case rebriefed.
 {¶ 15} On rebriefing, appellant submits a brief that he claims is thirty-five pages long, the maximum page limit. However, he fails to count eight pages of preface, statement of the case, and statement of facts. These sections clearly count towards the maximum page limit. App.R. 19(A) only excludes the table of contents, table of cases, statutes and other authorities cited, and appendices from the tally. See, also, Loc. R. IV(1) (which also does not exclude the statement of the case and statement of the facts from the page count). Although appellant is pro se, he is a practicing and seasoned attorney who at least should have read the relevant appellate rule after we chastised him the first time. Appellant's brief is very repetitive and could easily have been written well under the page-limit. In the interests of justice, we shall proceed to address the merits of this appeal.
 ASSIGNMENTS OF ERROR {¶ 16} Appellant presents the following three assignments of error:
 {¶ 17} "The municipal court's finding of contempt against the appellant was due to the failure of notice on the record of the underlying original `trial' date to the client and appointed [trial] counsel not supported by the evidence contained in the record and therefore was an abuse of discretion."
 {¶ 18} "The municipal court's finding of indirect criminal contempt against the appellant did not meet the burden of proof beyond a reasonable doubt standard under the sole prosecution witness testimony for the court's finding and the complete underlying court case record."
 {¶ 19} "The municipal court's hybrid february 13, 2004 order mandating `appointed counsel's scheduled mental health evaluation' was not supported by the facts in the record and was arbitrary, personal, and disproportionate and an improper conditional sentence."
 {¶ 20} Appellant basically presents issues of surrounding notice, sufficiency of the evidence, and sentencing.
 GENERAL CONTEMPT LAW {¶ 21} We have before us a case of indirect criminal contempt. In a case of criminal contempt, punishment is punitive and is usually imposed unconditionally in order to vindicate the court's authority. Denovchekv. Board of Trumbull Cty. Commrs. (1988), 36 Ohio St.3d 14, 16. This is opposed to civil contempt where the purpose of the punishment is coercive, remedial, and conditional and where the contemnor is usually able to purge the contempt by compliance with a court order. Civil contempt is imposed in order to benefit another party. Id.
 {¶ 22} One type of contempt is disobedience of, or resistance to, an order, judgment, or command of a court or officer. R.C. 2505.02(A). An attorney's failure to appear for a scheduled hearing constitutes such contempt and is considered indirect. In re Guardianship of Myers, 7th Dist. No. 02CA6, 2003-Ohio-5308, ¶ 29-30. It is said to be indirect as opposed to direct because the attorney's absence does not occur in the court's presence or constructive presence. Id. See, also, Weiland v.Industrial Comm. (1956), 166 Ohio St. 62, 66 (noting that the action of arriving late to court is direct contempt but the prior action of not being present is indirect contempt).
 {¶ 23} Because the contempt is indirect, it cannot be punished summarily as in the case of direct contempt. See R.C. 2705.01 (allowing summary punishment for one guilty of misbehavior in the court's presence or so near the judge as to obstruct the administration of justice). See, also, Myers, 7th Dist. 02CA6, at ¶ 29-30. Rather, in indirect contempt cases under R.C. 2505.02, a charge in writing shall be filed with the clerk of courts, an entry thereof made in the journal, and an opportunity given to the accused to be heard, by himself or with counsel. R.C. 2705.03.
 {¶ 24} Notice is sufficient to comply with R.C. 2705.03 if it apprises the defendant of the nature of the charge against him so he may prepare a defense. City of Cincinnati v. Cincinnati Dist. Council 51 (1973),35 Ohio St.2d 197, 203 (finding the notice apprised the defendant of the nature of the proceeding as contempt and the reason for the proceeding as violation of an order, regardless of the failure to specify that defendant was accused of thirty-seven different acts of contempt). We have held that an attorney-contemnor receives adequate notice of a charge where he attends a hearing for his client and is informed that he would be subject to contempt proceedings and a show cause order is filed the same day naming him and giving him two months to prepare a defense.Citicasters Co. v. Stop 26-Riverbend (2002), 147 Ohio App.3d 531, 548
(7th Dist.).
 ANALYSIS ON NOTICE AND OPPORTUNITY TO BE HEARD {¶ 25} Contrary to appellant's contention, he did have notice of the hearing months in advance. A judgment entry clearly states that the Maple case would be called for a hearing on September 23, 2003. Appellant signed this judgment entry. Appellant urges that a separate notice of the hearing should have been delivered because he could reasonably anticipate that his client would complete the pretrial diversion program and that no trial would take place.
 {¶ 26} Even if his client had completed the pretrial diversion program, there is absolutely no reason to believe that the scheduled hearing would not have still proceeded as a status hearing, a plea hearing to a reduced charge, or to allow the court to enter a dismissal. Regardless, an attorney cannot just assume that his client would complete the pretrial diversion program and that a scheduled hearing date would be canceled. Rather, he should have called to confirm his belief.
 {¶ 27} Additionally, the judge's secretary called appellant that morning and told him to appear for the prescheduled hearing, which was being pushed back for his appearance. Appellant did not appear, and he was later advised that a capias was issued for his arrest. He appeared on the capias days later and was advised that a contempt hearing would be held.
 {¶ 28} The capias was refiled as satisfied and the court added that a contempt hearing would be held due to appellant's failure to appear for a hearing on September 23, 2003 in the Maple case. The notice warning that appellant could be held in contempt was sufficient as it apprised him of the nature of the charge and the reason for the charge in a manner allowing him to prepare a defense. See Cincinnati Dist. Council 51,35 Ohio St.3d at 203 (upholding notice of the nature of the proceeding as contempt and the reason for the proceeding as a violation of a court order).
 {¶ 29} Appellant appeared at the contempt hearing as per the notice. He asked for a continuance, but the court denied his request. The grounds for his request were that he did not know that he could call witnesses in his defense. The court stated that as an attorney, he should have known that he could present evidence at the contempt hearing. Appellant had the opportunity to hire counsel or defend himself; as he pointed out, he is a practicing attorney. The trial court did not deprive appellant of any rights when it denied his request for a continuance made in the middle of the contempt hearing. Appellant made his apologies and excuses in his defense; that he failed to perfectly prepare for his hearing is his own problem.
 {¶ 30} After the show cause hearing, appellant was held in contempt. He was then given notice of a separate sentencing hearing. A pretrial and two sentencing hearings were held. For the above reasons, there are no due process problems with the notice and opportunity to be heard in this case.
 LAW ANALYSIS ON CONTEMPT FINDING {¶ 31} The standard of proof in criminal contempt is that of beyond a reasonable doubt. Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250,251. The elements the court must have found existed beyond a reasonable doubt are that appellant had knowledge of the September 23, 2003 hearing and that he failed to appear. Citicasters, 147 Ohio App.3d at 545. Appellant's knowledge of the order violated can be proven by circumstantial evidence. See Rowe v. Standard Drug Co. (1937),132 Ohio St. 629, 646. See, also, State v. Local Union 5760 (1961),172 Ohio St. 75, 87 (notice of order can be actual or by service).
 {¶ 32} If appellant had knowledge of the hearing date and he failed to appear in the face of this knowledge, one could conclude beyond a reasonable doubt that he intentionally defied the court order. SeeMidland Steel Prods. Co. v. U.A.W. Local 486 (1991), 61 Ohio St.3d 121, 127
(criminal contempt for violating restraining order), citing Rowe, supra. See, also In re Estate of Hunter, 7th Dist. No. 00CA107, 2003-Ohio-1435, ¶ 26. A contemnor is presumed to intend the reasonable, natural, and probable consequences of his acts. Local Union 5760, 172 Ohio St. at 88
(intent to commit contempt may be deduced from circumstances attending the act).
 {¶ 33} Here, at the capias hearing and the later contempt hearing, appellant did not contend that he was unaware of the September 23, 2003 hearing. Rather, he noted that he remembered to call the Campbell Municipal Court to reschedule but initially "oversighted" calling Youngstown Municipal Court. He also noted that he purposefully chose to miss various municipal court hearings in order to assist a client in testifying as a witness before a grand jury convened to investigate police brutality. And, he did not appear after being warned by the judge's secretary that he would be held in contempt.
 {¶ 34} At his second sentencing hearing where he was to present evidence in mitigation and where he also filed a motion for reconsideration, appellant noted for the first time his disagreement with the court's decision that its July 11, 2003 order gave him notice that a hearing would take place on September 23, 2003. However, sentencing is not the proper place to raise defenses which could have easily been presented earlier. Moreover, the July 11, 2003 order signed by appellant speaks for itself. As mentioned earlier, an attorney cannot assume that a set hearing will not proceed.
 {¶ 35} Additionally, appellant was called by the court's secretary and reminded about the hearing. When advised that the court was going to issue a capias, he could have come to Youngstown from the neighboring city of Warren. However, he chose to remain in Warren to support a client who was testifying before a grand jury and to seek an appellate stay for another client.
 {¶ 36} Whether or not this court would have convicted appellant of contempt, if some reasonable person could have found his guilt beyond a reasonable doubt, we must uphold his conviction. State v. Goff (1998),82 Ohio St.3d 123, 128; State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Under the facts and circumstances existing in this case, a reasonable trier of fact could find sufficient evidence to prove beyond a reasonable doubt that appellant knew of a court order to appear and failed to do so with the requisite intent.
 {¶ 37} Moreover, we shall not second-guess the credibility determinations made by the trial court concerning appellant's changing claims and sincerity. See Thompkins, 78 Ohio St.3d at 387. See, also,State v. DeHass (1967), 10 Ohio St.2d 230, 231 (trial court in best position to judge credibility after viewing demeanor, gestures, and voice inflection). Although it is possible that this court may have come to a different conclusion if it was acting as the trier of fact, the contempt finding is not against the manifest weight of the evidence.
 SENTENCING FOR CONTEMPT {¶ 38} While not on the record, a "pretrial" was apparently held after the contempt finding but before sentencing. At this in chambers hearing, appellant's appointed counsel spoke to the court and advised she would seek appellant's agreement to a mental health evaluation. When the case was called for sentencing February 13, 2004, the court asked why the evaluation was not arranged. Appellant responded that he was not in agreement with the evaluation. The court declared that he had been ordered to attend the evaluation, but as appellant correctly explained, he was never ordered to do so. Appellant then dismissed his attorney and presented arguments in mitigation of sentence. Thereafter, the court sentenced appellant to thirty days in jail. The court suspended the sentence until March 8, 2004. The court also ordered appellant to attend a mental health evaluation as scheduled by his former attorney.
 {¶ 39} On March 8, 2004, the trial court noted that appellant failed to attend a mental health evaluation. Appellant argued that there was no basis in the contempt record that would warrant such an order. He then reargued the merits of the contempt finding. In considering appellant's sentence, the court revealed, "I am also advised that you had an altercation in Mahoning County Common Pleas Court with Judge Krichbaum" and implied that appellant had been removed from a case based upon his behavior. (Mar. 8, 2004 Tr. 10). The court then imposed the thirty-day jail sentence, and a mental health evaluation was ordered to be scheduled by probation.
 {¶ 40} Initially, we note that there is no indication that appellant could have purged the jail sentence by submitting to a mental health evaluation. A conditional sentence or one that is able to be purged is permissible in a criminal contempt but is not required as it is in cases of civil contempt. See State v. Kilbane (1980), 61 Ohio St.2d 201, 206.
 {¶ 41} Moreover, this is not the typical case for purging; that is, the defendant purges by doing the very thing that his failure or refusal to do caused the court to hold him in contempt in the first place. Here, the mental health evaluation is not the reason he was held in contempt; rather, he was held in contempt for failing to appear for a scheduled court hearing with his client. In fact, pursuant to this sentence he still must submit to the evaluation without hope of purging. There was and is no indication that appellant "carries the key" to his jail cell.
 {¶ 42} The first question then is whether a court can order mental health evaluations as part of a contempt sentence. R.C. 2705.05(A) provides that the court may impose the following sentences for contempt of court:
 {¶ 43} "(1) For a first offense, a fine of not more than two hundred fifty dollars, a definite term of imprisonment of not more than thirty days in jail, or both;
 {¶ 44} "(2) For a second offense, a fine of not more than five hundred dollars, a definite term of imprisonment of not more than sixty days in jail, or both;
 {¶ 45} "(3) For a third or subsequent offense, a fine of not more than one thousand dollars, a definite term of imprisonment of not more than ninety days in jail, or both."
 {¶ 46} However, it has been held that the courts are not limited in their sentencing for contempt by this legislative enactment. CiticastersCo. v. Stop 26-Riverbend, Inc. (2002), 147 Ohio App.3d 531, 546-547
(7th Dist.), citing Dombroski v. Dombroski (Sept. 28, 1999), 7th Dist. No. 506. We noted that the Supreme Court held that the legislature can prescribe procedure in indirect contempt cases but the power to punish for contempt is inherent in the courts. Id., citing Cincinnati v. CincinnatiDist. Council 51 (1973), 35 Ohio St.2d 197, 207-208 (where the Court pronounced that it is highly doubtful that the legislature can limit the power of the court to punish for contempt).
 {¶ 47} Under such holding, courts have allowed greater jail sentences and greater fines than those mentioned in R.C. 2705.05. Byron v. Byron,
10th Dist. No. 03AP-819, 2004-Ohio-2143; Caldwell v. Caldwell, 4th Dist. No. 02CA17, 2003-Ohio-1752; Latson v. Chrysler Corp. (June 14, 2000), 9th Dist. No. 19478. "A common pleas court may exercise its discretion to impose any sanction that is reasonable in light of the contemptuous conduct." Caldwell, 4th Dist. No. 02CA17. Furthermore, this court has allowed a trial court to modify a property division in a divorce case based upon a finding of contempt. Dombroski, 7th Dist. No. 506. Thus, in general, a court can deviate from the penalties available in R.C. 2705.05
so long as these are reasonable based on the record.
 {¶ 48} In the instant case, it is possible that the court could have asked for evaluation prior to sentencing as part of a presentence investigation report or to determine probationary programs or as an option in lieu of sentencing. See, e.g., City of Lakewood v. Davies
(1987), 35 Ohio App.3d 107. However, appellant refused that option, and once the court finally sentenced him to thirty days in jail, forced submission to a mental health evaluation was not proper based on the facts in the record of this case, especially where that was not the basis of the contempt finding as in a typical purging case.
 {¶ 49} Although the court has inherent power to sentence for contempt, there appear to be some boundaries on the type of punishment, such as jail, fine, probation with conditions, community service, costs, attorney fees, or an order related to the contempt, such as to perform the act refused to be performed. However, it appears that ordering a mental health evaluation in a case where an attorney-contemnor failed to appear at a hearing for his client is not an appropriate sentence for a court under the circumstances herein.
 {¶ 50} The record also reflects that the mental health evaluation would serve no purpose to the contempt that occurred here. If he submits to the evaluation, he still must serve the sentence in jail. It is an order to submit to an evaluation, not counseling. Thus, it has no rehabilitative, restorative, or even punitive effect, as sentencing is designed to achieve.
 {¶ 51} Furthermore, there is nothing in the record of this case or evident in the court's findings demonstrating that a mental health evaluation is relevant or proper. The record does not reflect a history or indication of mental health issues. The presentence investigation mentions nothing about mental health issues and opines that appellant is in good health. Accordingly, based on the record here, this court hereby deletes the portion of the sentence ordering appellant to submit to a mental health evaluation.
 {¶ 52} Moreover, based on the facts of record, there is nothing to substantiate appellant's thirty-day sentence. As appellant notes, it is the maximum allowed under the statute for first offenders. As we noted above, the legislature cannot limit the court's authority on the matter of sentencing for contempt. Still, the statute operates as a guideline as to what must be considered a reasonable sentence in cases of contempt.
 {¶ 53} We are permitted to review the contempt sentence on an abuse of discretion basis. See Weiland v. Industrial Commission (1956),166 Ohio St. 62, 66. In Weiland, the Supreme Court held that a $100 fine was so disproportionate to the seriousness of the offense of an attorney's being forty minutes late due to car trouble as to require reversal.
 {¶ 54} The First District has also reversed a contempt sentence as being too severe using Weiland and App.R. 12 as its authority to do so.Inmont Corp. v. International Printing Graphic Commun. Union (1977),54 Ohio App.2d 17, 23-24. In that case, the court modified a ten-day jail sentence for violation of a stay order in a labor dispute to a three-day jail sentence with credit for the three days already served. Id.
 {¶ 55} The Fourth District modified a thirty-day contempt sentence to a two-day sentence with credit for the two days already served. In theMatter of Kempfer (Jan. 31, 1994), 4th Dist. No. 93CA15 (where the contemnor yelled, "what the hell do you know" while a vehicular homicide victim's husband was testifying at the sentencing hearing for the contemnor's brother-in-law). The court noted that the sentence should be reasonably commensurate with the gravity of the offense. Id.
 {¶ 56} Although appellant's claims in support of his contempt defense may not be enough to reverse his conviction, these claims appear to be enough to mitigate his omissions and establish an abuse of discretion on the part of the trial court. Appellant set forth explanations in mitigation of his failure to appear even after being called. In reviewing the presentence investigation, there is no mention of prior contempts or other crimes besides traffic offenses. The presentence investigation found no evidence of substance abuse problems. In fact, probation recommended no jail time or probation; it recommended a mere $100 fine with costs.
 {¶ 57} The effect of appellant's contempt must also be considered; that is, the client was not present on the day of the hearing either. Thus, it is highly unlikely that the case would have been tried that day.
 {¶ 58} Thus, it appears that thirty days in jail is unreasonable and excessive under the facts and circumstances on record in this case. This sentence appears to be disproportionate to appellant's act of forgetting to call the court to reschedule his hearing or assuming that the hearing would not proceed due to a pretrial diversion program. While following the Probation Department's recommendation appears reasonable, a higher fine appears reasonable or a period of probation appears reasonable, a sentence of thirty days in jail based on the contempt action in this record appears to be unreasonable in light of the circumstances.
 {¶ 59} Thus, we conclude that the sentence constitutes an abuse of discretion. Rather than modifying as we are permitted to do, we hereby remand to allow the trial court to formulate a more suitable sentence. See App.R. 12(A)(1)(a) (allowing this court to modify judgments). See, also, Inmont, 54 Ohio App.2d 17; Kempfer, 4th Dist. No. 93CA15.
 {¶ 60} Before reversing the trial court's sentence for contempt inWeiland, the Supreme Court stated that the trial court is to be commended for demanding a prompt and efficient operation as the court is justified in expecting counsel's presence as scheduled; however, the court noted that the punishment imposed must be proportionate to the act or omission. Weiland, 166 Ohio St. at 65. We find this statement appropriate here.
 {¶ 61} For the foregoing reasons, the judgment of the trial court for contempt is affirmed, the sentence of mental health evaluation is reversed, and the sentence of thirty days in jail is reversed and remanded for imposition of a more reasonable sentence.
Waite, J., concurs. DeGenaro, J., concurs.